417 So.2d 1212 (1982)
Ronald J. SPILLMAN, et al.
v.
The CITY OF BATON ROUGE.
No. 14528.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Rehearing Denied August 24, 1982.
*1213 John L. Avant, Floyd J. Falcon, Jr., Baton Rouge, for plaintiffs-appellees Ronald J. Spillman, et al.
L. Edwin Greer, and George W. Lang, II, Asst. City Attys., Shreveport, for amicus curiae City of Shreveport.
Charles M. Raymond, Lynn E. Williams, Baton Rouge, for defendant-appellant The City of Baton Rouge.
Camille F. Gravel, Jr. and Anna E. Dow, Baton Rouge, for amicus curiae AFL-CIO.
En Banc.
ELLIS, Judge:
This is a class action brought on behalf of certain full-time and former firemen in Baton Rouge, seeking recalculation of accrued longevity pay and overtime and holiday pay earned during the two years preceding the filing of the suit, and payment of the amounts thereof allegedly due.
Plaintiffs allege that the City of Baton Rouge has refused to compute longevity pay as provided by R.S. 33:1992; has failed to give holiday pay as provided by R.S. 33:1999; and has failed to utilize state supplemental pay paid under R.S. 33:2001, et seq., and longevity pay under R.S. 33:1992 in computing overtime pay under R.S. 33:1994.
The City of Baton Rouge contends that it is not obliged to follow the above statutory provisions because of its "Home Rule Charter" and because of the provisions of Article VI, Section 6 of the Constitution of 1974, which provides:
"The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter."
Plaintiffs argue that Article VI, Section 6, supra, is modified by the provisions of Article VI, Section 14 of the Constitution of 1974, which provides:
"No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board."
The City filed a peremptory exception of no cause of action which was overruled. By amended answer, the City pled peremptory exceptions of prescription and estoppel by laches, and asked for credit for amounts paid by it under its own longevity plan *1214 should R.S. 33:1992, and the other statutes involved herein, be found applicable.
After trial on the merits, the trial judge found the action to be a proper class action; that the City of Baton Rouge is subject to Article VI, Section 14, supra, and therefore has been subject to the provisions of R.S. 33:1992, 1994 and 1999 since the adoption of the Constitution of 1974, as of January 1, 1975; that all claims for benefits which accrued more than one year prior to filing the suit had prescribed; that firemen were due extra compensation for overtime and holiday pay; that state supplemental pay and longevity pay should be included in the base for computation of overtime and holiday pay; and awarded amounts due as a result of the above findings. The plea of estoppel by laches was denied.
The City has appealed from the judgments below, assigning as error the holdings of the trial court that R.S. 33:1992, 1994 and 1999 are applicable to Baton Rouge; that the principle of estoppel by laches is not applicable; and that the instant suit is a true class action.
We shall consider the assignments of error in inverse order. Defendant argues that this suit does not meet the criteria for a class action. Articles 591 and 592 of the Code of Civil Procedure provide:
"Art. 591. A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
"(1) Common to all members of the class; or
"(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right."
"Art. 592. One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members."
In Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975), the court elaborated on the above articles as follows:
"They show that, in sanctioning class actions, the legislature has imposed the following requirements: (1) a class so numerous that joinder is impractical; (2) the joinder as parties to the suit of one or more parties who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class; and (3) a `common character' between the rights of the representatives of the class and the absent members of the class."
The court further stated that:
"Thus, that different recoveries are sought, based upon the same factual transaction and same legal relationship, was not intended to defeat a class action."
Defendant's main argument on this issue is that the members of the class lack a "common character" because the amount due to each member of the class would be different. This, of course, is not a basis for the rejection of a class action under the Stevens case, supra.
Defendant further argues that joinder of all members of the class is not impracticable, as evidenced by the fact that the original 28 plaintiffs grew to over 350 by joinder, making more than half of the class nominal plaintiffs. Defendant states in its brief that there are 561 members of the class, which indicates that there are over 200 members who are not parties to the suit. We do not find that defendant has shown that it would be practical to join this great a number of class members so as to defeat the class action.
We are of the opinion that the class action is particularly appropriate in a case of this kind, in which the class is large, the communality of interest is complete, and the recovery of each member of the class may be easily computed.
Defendant's next contention is that the trial judge erred in holding that estoppel by *1215 laches does not bar all recovery by plaintiffs.
The record reveals that, although plaintiffs may have been entitled to the extra pay sought herein ever since January 1, 1975, when the Constitution of 1974 became effective, this suit was not filed until September 20, 1977. The trial court sustained an exception of prescription as to all claims for extra pay due before September 20, 1976, one year before the suit was filed.
In Bradford v. City of Shreveport, 305 So.2d 487 (La.1974), the court said:
"... an unreasonable delay by aggrieved public employees in asserting monetary claims against a public body may relieve that body of liability under the doctrine of laches. The jurisprudence has based this doctrine upon equitable considerations peculiar to public bodies, which operate within the constraints of each fiscal year, to require that such claims be promptly asserted in order that public revenues normally channeled in the claimant's direction might not be irretrievably diverted to other lawful public purposes, thereby upsetting the orderly fiscal processes of government. See also Devillier v. City of Opelousas, 247 So.2d 412 (La.App.3d Cir. 1971) and authorities cited therein. Thus, in order to invoke the doctrine of estoppel by laches as to the unprescribed portion of plaintiffs' claims, defendant must prove (1) unreasonable delay by the plaintiffs in presenting those claims that arose within one year prior to suit and (2) substantial prejudice to or upset of the city's fiscal affairs."
The question presented, therefore, is whether there has been an unreasonable delay in presenting the demands for the extra pay due. Ronald Spillman, one of the plaintiffs, testified that he met with the mayor of Baton Rouge several times, as well as with other public officials, to discuss the extra pay which is the object of this suit. The mayor testified that he had no recollection of any such discussions. In any event, there is no evidence of a formal demand or protest having been made prior to the filing of this suit.
Otha L. Schofield, Finance Director of Baton Rouge, testified that as of the time of the trial, in September, 1980, there were no funds either allocated to or available for the payment of the extra pay demanded in this suit. He further testified that there had been a budget surplus in excess of two million dollars in 1978 and of several million dollars in 1979, but that these funds had been budgeted in later years, and therefore were no longer available. He was unable to say if there would be a surplus in 1980.
Considering the foregoing circumstances, we are of the opinion that there has been ample opportunity, since the filing of this suit, for Baton Rouge to provide for the possibility that the plaintiffs herein might prevail. Nor do we find it an unreasonable delay to bring suit for wages within the prescriptive period provided by law. We therefore find that plaintiffs are not prevented by the doctrine of estoppel by laches from collecting that part of the extra pay sought herein against which prescription has not run.
We turn now to the constitutional questions presented. Because of the conclusion reached below, we pretermit consideration of the argument that there is a conflict between Sections 6 and 14 of Article VI of the Constitution of 1974.
Article XIV, § 26 of the Constitution of 1974 provides as follows:
"Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."
Under LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir. 1960), and its progeny, R.S. 33:1992, et seq., did not apply to the City of Baton Rouge. Therefore, the right to the benefits provided thereby did not exist for the plaintiffs in this case under the Constitution of 1921, based on those statutes, which were, of *1216 course, enacted prior to the Constitution of 1974. It therefore appears clear that, under the above provision, it was not intended that those rights would automatically be bestowed by the adoption of the Constitution, without some additional action on the part of the legislature. No such action has been taken. We are of the opinion that without such legislative action, the Constitution of 1974 did not operate to extend the application of the law as it existed prior to January 1, 1975.
We further note that Article VI, § 14, supra, seems to relate to the effect of future legislation rather than to the interpretation of existing legislation, which further supports our conclusion, reached above.
The judgment appealed from is therefore reversed, and there will be judgment herein dismissing plaintiffs' suit at their cost.
REVERSED AND RENDERED.
COVINGTON and COLE, JJ., dissent.

ON APPLICATION FOR REHEARING
Rehearing Refused.
COVINGTON and COLE, JJ., dissent from denial of rehearing.
LANIER, J., dissents from denial of rehearing.
The decision in this case was based on a Louisiana Constitutional provision that was neither briefed nor argued by the parties. In my opinion, fundamental fairness would dictate that the parties be given an opportunity to do so.