305 So.2d 487 (1974)
W. C. BRADFORD et al.
v.
CITY OF SHREVEPORT.
Nos. 54965, 54966.
Supreme Court of Louisiana.
December 2, 1974.
Rehearings Denied January 17, 1975.
*488 Neil Dixon, Dixon, Thomas & Fleming, John Gallagher, Roland J. Achee, W. Gene Carlton, Shreveport, for defendant.
Robert G. Pugh, Pugh & Nelson, Shreveport, for plaintiffs.
*489 Troy E. Bain, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for amicus curiae for Murton Edwards and others.
Hugh T. Ward, Peters, Ward & Miller, Shreveport, amici curiae for Professional Fire Fighters Ass'n of La., AFL-CIO & Shreveport Fire Fighters Ass'n Local No. 514, AFL-CIO in Support of W. C. Bradford and others.
MARCUS, Justice.
This action was instituted by 21 policemen employed by the Department of Public Safety for the City of Shreveport. Plaintiffs seek to recover the difference between their usual salary and overtime wages of one-and-a-half times their usual salary for hours worked in excess of 48 hours per week during a period extending from August 16, 1968 to April 30, 1971. Defendant filed a peremptory exception of prescription, alleging that all claims for wages earned more than one year before the suit were prescribed, a plea of estoppel by laches, and a general denial of liability for the overtime pay. After trial, the district court sustained defendant's plea of prescription, overruled the plea of estoppel by laches, and rendered judgment in favor of those plaintiffs who earned overtime wages within one year prior to suit.[1]
Both the city and the policemen appealed to the Second Circuit Court of Appeal, which reversed the ruling of the district court sustaining defendant's exception of prescription and applied the doctrine of estoppel by laches to disallow plaintiffs' claims for overtime pay for hours worked prior to January 1, 1970. Bradford v. City of Shreveport, 294 So.2d 855 (La.App.2d Cir. 1974). Upon the applications of both sides to the dispute, we granted certiorari. 299 So.2d 351 (La. 1974).
The facts giving rise to this controversy are not in dispute. In 1968, a group of black women residing in a predominantly black area of Shreveport approached the chief of the Shreveport police department to complain of frequent burglaries and assaults in that area and to request increased police protection. After a series of informal meetings among the police chief, the Commissioner of Public Safety, and black members of the police force, it was decided that, to avoid exacerbating prevailing racial tension in the area, the increased patrols should be comprised of black police officers. However, because the number of blacks on the force was insufficient to man an appropriate number of three eight-hour shifts per day, it was suggested that patrols be divided into twelve-hour shifts, which would better utilize available manpower.
In a meeting with most of the black officers, the police chief outlined the suggested plan. The twelve-hour shifts were to be filled on a voluntary basis only, and overtime pay for the additional hours was to be at the same rate as the usual salary. The response to the plan was favorable, as the officers welcomed the opportunity to earn extra wages. Thus, nearly all of the black officers volunteered for the extra duty. The twelve-hour patrols commenced on August 16, 1968 and continued through April 30, 1971. At that time, it was no longer considered feasible to continue the overtime plan, as the voters of the city failed to approve a tax renewal that would have provided necessary funds to finance the extra salaries.
Sometime after the overtime plan was terminated, some of the officers who had worked the twelve-hour shifts were informed of a state statute purporting to require that policemen working more than 48 hours a week must be compensated at one-and-a-half times their usual salaries for the overtime hours. See La.R.S. 33:2213 (1950). A representative group approached *490 the Commissioner of Public Safety and inquired about the law. He suggested that they request an opinion from the city attorney on the matter. By letter dated August 4, 1971, the officers requested the city attorney to write a letter to the police chief and Commissioner of Public Safety regarding the time-and-a-half pay statute. They never received a reply to the request and, shortly thereafter, retained counsel. This suit was filed on September 23, 1971.
The resolution of this controversy rests upon our determination of three issues:
(1) whether the Home Rule Charter of the City of Shreveport precludes the application of La.R.S. 33:2213, which requires that policemen be paid one-and-a-half times their usual salary for hours worked in excess of 48 hours per week;
(2) whether the action by the policemen for back pay is prescribed; and
(3) if the action is not prescribed, whether the plaintiffs are estopped by laches from recovery.

I.
Plaintiffs base their claim for compensation on La.R.S. 33:2213 (1950), which is a general law that provides:
The maximum hours of work required of any full-time paid patrolman, patrolman first class, sergeant, lieutenant, or captain, or any other employee of the police department, except those employed in a position, grade, or class above that of captain, in any municipality affected by this Sub-part [i. e., a municipality having a population of not less than 12,000 nor more than 250,000], shall be forty-eight hours in any one calendar week, and eight hours in any one day. In cases of emergency, any employee may be required to work in excess of the maximum. For each hour so worked the employee shall be paid at the rate of one and one-half times his usual salary, to be determined by reducing his monthly salary to an hourly scale.
Defendant resists the claim on the ground that, as a city operating under a home rule charter, it may compensate its police free from state regulation. Thus, we must initially determine whether the compensation of Shreveport city policemen properly rests within the domain of the city or the state.
It has long been settled in this state[2] that municipal corporations are creatures or agencies of the state established by the legislature for the purpose of administering local affairs of government and, as such, possess only those powers delegated by the state. It follows, then, that where a municipal corporation derives its powers of government from legislative acts, the contours of that power may be shaped by the will of the legislature.[3] However, where the powers of municipal government are derived directly from the state constitution, the legislature may not alter the local authority except where permitted by the constitution.[4]
The City of Shreveport derives its powers of government directly from article 14, section 37 of the Louisiana Constitution, which provides in pertinent part:
The people of the City of Shreveport shall have power to establish in the manner *491 hereinafter provided, government for the said City.
(1) [Sub-section (1) details the mechanics of drafting a plan of government.]
(2) The plan of government shall be subject to amendment by election of the people as provided therein.
La.Const. art. 14, § 37 (1921), added by La.Acts 1948, No. 529. Pursuant to this general authorization of home rule, the City of Shreveport adopted a plan of government (or home rule charter) on February 3, 1950, in which it reserved
. . . all the powers, rights, privileges and immunities which are now or may hereafter be . . . conferred . . . by the constitution and general laws of the state . . . .
Plan of Government of the City of Shreveport § 2.101 (1950). The question presented here is whether the home rule authorization of the constitution and the plan of government adopted pursuant thereto grant to the city the power to fix the overtime salaries of its policemen.
Defendant urges that the decisions of Letellier v. Jefferson Parish, 254 La. 1067, 229 So.2d 101 (1969), and LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir. 1960), require that we find the overtime pay statute to be inapplicable to the present dispute. In Letellier, we held that a special statute creating a pension plan for Jefferson Parish firemen contravened article 14, section 3(c) of the Louisiana Constitution, which grants home rule to Jefferson Parish, as a matter relating to local structure and organization and was therefore unconstitutional. In LaFleur, the court of appeal ruled that a general statute fixing minimum salaries for firemen[5] was inapplicable to Baton Rouge firemen because it constituted a matter of local governmental structure and organization specifically and exclusively allotted to the city by its grant of home rule under article 14, section 3(a) of the state constitution.
Neither decision controls here. The grants of home rule to Jefferson Parish and the City of Baton Rouge are almost identical[6] and provide that,
[s]ubject to the constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions . . ., the local authorities may draft and adopt appropriate plans of government. Thus, the state constitution reserves to the state *492 final authority over all matters relating to the powers and functions of local government, but delegates exclusive authority over matters of structure, organization, and distribution of municipal powers to the local governments. Unlike the constitutional provisions relating to Baton Rouge and Jefferson Parish, the grant of home rule to the City of Shreveport makes no express delegation to the city of exclusive authority over such matters of internal structure, organization, and distribution of municipal powers. Thus, applying the established rule that whatever powers of government are not expressly granted to a city remain with the state, we find that the City of Shreveport is without the authority to regulate overtime pay for policemen to the exclusion of state law. Therefore, La.R.S. 33:2213, requiring time-and-a-half overtime pay for policemen, applies here.

II.
Having declared the overtime pay statute to be applicable to this controversy, we must next determine whether the suit brought to recover the back pay is prescribed. Article 3534 of the Louisiana Civil Code provides:
The following actions are prescribed by one year:
That of justices of the peace and notaries, and persons performing their duties, as well as that of constables, for the fees and emoluments which are due to them in their official capacity.
That of masters and instructors in the arts and sciences, for lessons which they give by the month.
That of innkeepers and such others, on account of lodging and board which they furnish.
That of retailers of liquors, who sell ardent spirits in less quantities than one quart.
That of workmen, laborers and servants, for the payment of their wages.
That for the payment of the freight of ships and other vessels, the wages of the officers, sailors and others of the crew.
That for the supply of wood and other things necessary for the construction, equipment and provisioning of ships and other vessels.
Defendant urges that the one-year prescription of article 3534 applies to plaintiffs' suit for back pay on three grounds: (1) properly translated, the article applies to actions by ". . . justices of the peace and notaries, and [other officers] performing their duties . . ."[7], which include policemen; (2) policemen are "constables" as that term is used in the article; and (3) policemen are "workmen, laborers [or] servants" suing for payment of their wages. Because we find the second ground *493 to have merit, we need not discuss the others.
Article 3534 was first introduced as article 3499 in the Civil Code of 1825. Since the 1825 Code was drafted in French and then translated into English,[8] the French version has long been considered to prevail over the English in cases of discrepancy between the two versions.[9] Further, the Civil Code suggests that an ambiguous text be interpreted according to the general and popular use of the words employed at the time the statute was passed. La.Civil arts. 14, 18 (1870). Thus, proper interpretive technique in this case requires that we first examine the French text of article 3499 in the Civil Code of 1825 and determine whether the French term "constables" as used at that time in its general and popular sense connoted those peace officers we now refer to as policemen.
According to the 1865 edition of Larousse's Grand dictionnaire universel, the French regarded the contemporary meaning of the word "constable" as derived chiefly from the English, as a title given to British police officers. 4 P. Larousse, Grand dictionnaire universel 1012 (1865); see also Black's Law Dictionary 383 (4th ed. 1951); The Concise Oxford French Dictionary 197 (1934). Thus, in understanding what was intended by the use of the French "constables" in 1825, the English definition must be consulted, and it unquestionably defines "constable" as a police officer. Webster's Third New International Dictionary 485 (1971). This convinces us that the redactors of the 1825 Code intended, in their use of the French word "constables," to include police officers in article 3499. Thus, the one year prescription of article 3534 of the present Civil Code of actions by constables ". . . for the fees and emoluments which are due to them in their official capacity. . ."is applicable to the present controversy to bar all claims by plaintiffs for back pay arising before September 23, 1970, i. e., more than one year before the date suit was filed.

III.
We must finally determine whether the plea of estoppel by laches urged by defendant applies to bar further any claims for back pay arising within the one year preceding suit. Relying principally on our decision in Ziemer v. City of New Orleans, 195 La. 1054, 197 So. 754 (1940),[10] defendant argues that plaintiffs are estopped by laches from claiming more than the pay they accepted for the overtime work without complaint or protest. According to the Ziemer decision, an unreasonable delay by aggrieved public employees in asserting monetary claims against a public body may relieve that body of liability under the doctrine of laches. The jurisprudence has based this doctrine upon equitable considerations peculiar to public bodies, which operate within the constraints of each fiscal year, to require that such claims be promptly asserted in *494 order that public revenues normally channeled in the claimant's direction might not be irretrievably diverted to other lawful public purposes, thereby upsetting the orderly fiscal processes of government. See also Devillier v. City of Opelousas, 247 So. 2d 412 (La.App. 3d Cir. 1971) and authorities cited therein. Thus, in order to invoke the doctrine of estoppel by laches as to the unprescribed portion of plaintiffs' claims, defendant must prove (1) unreasonable delay by the plaintiffs in presenting those claims that arose within one year prior to suit and (2) substantial prejudice to or upset of the city's fiscal affairs.
Initially, defendant has failed to prove an unreasonable delay on the part of plaintiffs in presenting that part of their claims that are not prescribed. Plaintiffs learned of the overtime pay statute within weeks after the overtime shifts were discontinued and met with the Commissioner of Public Safety to discuss the matter. Pursuant to his advice, they then requested the city attorney's opinion on the matter. It was only six or seven weeks after their request, which had apparently been ignored, and less than five months after the overtime shifts were terminated, that they filed this suit. Thus, they cannot be said to have unreasonably delayed in litigating their claim. Moreover, there is nothing in the record to indicate that satisfaction of these claims will upset the orderly fiscal processes of the city. Hence, we find that, on the facts, plaintiffs are not estopped by laches from recovering that portion of back pay earned within one year prior to suit.

Decree
For the foregoing reasons, the judgment of the court of appeal is reversed, and the judgment of the district court is reinstated.
BARHAM, J., concurs. "Workmen, laborers and servants" would also classify the prescriptions as one (1) year.
CALOGERO, J., dissents, believing that art. 3534 is not applicable.
DIXON, J., is recused.
NOTES
[1] Previous proceedings in this matter, in which the ruling of the trial court sustaining defendant's peremptory exception of no cause of action was reversed on appeal, are reported as Bradford v. City of Shreveport, 266 So.2d 254 (La.App.2d Cir.), cert. denied, 263 La. 364, 268 So.2d 256 (1972) ("[T]he judgment is not final.").
[2] E. g., Ezell v. City-Parish Plumbing Bd., 234 La. 441, 100 So.2d 464 (1958); City of New Orleans v. Board of Supervisors of Elections, 216 La. 116, 43 So.2d 237 (1950); Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235 (1949); Edwards v. Town of Ponchatoula, 213 La. 116, 34 So.2d 394 (1948).
[3] E. g., Pyle v. City of Shreveport, 215 La. 257, 40 So.2d 235 (1949); City of Shreveport v. Brister, 194 La. 615, 194 So. 566 (1940).
[4] E. g., LaFleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1st Cir. 1960).
[5] La.R.S. 33:1992 (Supp.1974).
[6] Section 3(a) of article 14 of the Louisiana Constitution provides in pertinent part:

The people of East Baton Rouge Parish shall have power to establish, in the manner hereinafter provided, government for the Parish and the several municipal corporations and other political subdivisions and districts situated therein.
. . . . . .
(2) Plan of government. Subject to the constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, such plan of government may provide, among other things:
. . . . . .
Section 3(c) of the same article provides in pertinent part:
The people of Jefferson Parish shall have the power to establish, in the manner hereinafter provided, government for the Parish and the several municipal corporations and other political subdivisions and districts situated therein.
. . . . . .
(2) Plan of Government. Subject to the provisions of the Constitution and laws of this State with respect to the powers and functions of local government, as distinguished from structure, organization, and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, such plan of government may provide, among other things:
. . . . . .
[7] The French text of the article, first introduced in its present form in the 1825 Code, reads:

L'action des juges de paix et des notaires, et autres officers en remplissant les fonctions, ainsi que des constables, pour les droits et emolumens qui leur sont dus en leur qualite;
Celle des maitres et instituteurs des sciences et arts, pour les lecons qu'ils donnent au mois;
Celle des hoteliers, aubergistes et traiteurs, a raison du logement et de la nourriture qu'il [qu'ils] fournissent;
Celle des marchands de comestibles et de liqueurs en detail, pour leurs fournitures;
Celle des ouvriers, gens de travail et de service, pour lepayement de leurs journees, gages et salaires;
Celle en payement du fret des navires et autres embarcations des gages et loyers des officiers, matelots et autres gens de l'equipage;
Celle pour fourniture de bois et autres choses necessaires aux constructions, equipement et avitaillement des navires et autres embarcations, se prescrivent par un an.
La.Civil Code art. 3499 (1825) (emphasis added).
[8] See Dainow, Introductory Commentary to the Louisiana Civil Code, in 1 West's LSA-Civil Code 1, 12 (1952).
[9] E. g., Sample v. Whitaker, 172 La. 722, 135 So. 38 (1931); Straus v. City of New Orleans, 166 La. 1035, 118 So. 125 (1928); Phelps v. Reinach, 38 La.Ann. 547 (1886); see Shelp v. National Surety Corp., 333 F.2d 431 (5th Cir.), cert. denied. 379 U.S. 945, 85 S.Ct. 439, 13 L.Ed.2d 543 (1964), noted in 39 Tul.L.Rev. 577 (1965).
[10] In Ziemer, 620 members of the Fire Department of the City of New Orleans filed suit against the city, seeking to have their reduced pay restored to its previous level and to recover the difference between the avails of a special tax dedicated to raise the salaries of city firemen and the amount actually paid in the years following the reduction. Finding that, in the intervening years before suit was filed, plaintiffs had accepted their pay as fixed without protest and that an unreasonable delay had elapsed that would have imposed a hardship on the city if recovery were allowed, the court invoked the doctrine of estoppel by laches to deny recovery.