341 So.2d 33 (1976)
Jimmy (P.G.) STANSBURY, Plaintiff-Appellant,
v.
CITY OF OPELOUSAS, Defendant-Appellee.
No. 5726.
Court of Appeal of Louisiana, Third Circuit.
December 21, 1976.
Rehearing Denied January 26, 1977.
Taylor & Trosclair by Frank P. Trosclair, Jr., Opelousas, for plaintiff-appellant.
Richard B. Millspaugh, Salvador L. Diesi, Opelousas, for defendant-appellee.
Before HOOD, DOMENGEAUX and HUMPHRIES, JJ.
HUMPHRIES, Judge.
This is an appeal by plaintiff, Jimmy Stansbury, from a judgment denying his claim for reinstatement and back pay from the City of Opelousas. The trial court held that plaintiff's claim for back pay and reinstatement was barred either because plaintiff had by his own actions terminated his employment or the doctrine of laches would prevent him from pursuing his claim at this late date. We affirm.
The facts of the instant case are of paramount importance to a determination of this matter and will be briefly stated.
In August of 1972 plaintiff Stansbury, an officer on the Opelousas City Police Force, was charged by affidavit with theft. On August 30, 1972 plaintiff was suspended from his duties on a motion passed before the Council. Stansbury was notified of this suspension orally by the Assistant Chief of Police. This suspension was confirmed by a letter dated September 1,1972 given Stansbury by the Assistant Chief of Police.
On September 6, 1972, by letter, Sgt. Stansbury requested a hearing and investigation of the suspension before the Opelousas Fire and Police Civil Service Board. The Board did not act on this request for an *34 investigation but instead, on October 10, 1972, ratified the suspension of "certain" policemen. Also in October, Stansbury was formally indicted by the St. Landry Parish Grand Jury. The Civil Service Board, on October 26,1972, pretermitted consideration of Stansbury's September 6 appeal until final disposition of the criminal proceedings.
On November 20, 1972 plaintiff plead guilty to a reduced charge on misdemeanor theft and was sentenced to serve six months in the parish prison. By letter dated November 22, 1972 the Chief of Police notified Stansbury that he was dismissed from the Opelousas Police Department. The appointing authority was the proper entity to exercise the dismissal but the plaintiff made no objection, in fact, he acquiesced. Plaintiff began serving his sentence on November 22, 1972 and was incarcerated until February 26, 1973. Plaintiff did not report for work after his release.
In May 1973, Stansbury requested the return of all funds contributed to the police pension fund. This request was made by letter through the attorney who represented him during the criminal proceedings. No action was taken to restore these funds to Stansbury until June, 1974 when Stansbury again requested that these funds for the period of his tenure as a police officer be returned. In this letter he stated ..." I began my employment with the Opelousas Police Department on November 1, 1960, which employment was terminated on August 29, 1972 ..." In support of his claim for these funds Stansbury cites Hoffpauir v. City of Crowley, 284 So.2d 114 (La.App. 3 Cir. 1973) which allowed the return of pension funds to police officers who had been terminated. The retirement funds were then refunded to Stansbury.
Finally, in September of 1974 Stansbury moved before the Opelousas Civil Service Board to press his original appeal filed as of September 6, 1972. The relief sought was reinstatement and back pay. The grounds for the claim were that neither the suspension of September 1, 1972 nor the termination of November 22, 1972 were in accordance with the Articles of the Constitution of 1921 dealing with civil service employees; therefore, Stansbury, never having been properly dismissed nor terminated is entitled to reinstatement and back pay. Subsequently, this suit moved back and forth between the Civil Service Board and the District Court over issues involving jurisdiction of this claim. Finally, a hearing was held on November 8, 1975 before the Civil Service Board to determine the merits of Stansbury's claim. Testimony was taken before the board, and upon conclusion of the case the Board denied plaintiff's claim. Notice of appeal from the Board's decision was given and the appeal lodged in the Twenty-seventh Judicial District Court. It was stipulated that the district court would be exercising either supervisory or original jurisdiction as the case required. All evidence taken before the Civil Service Board along with accompanying letters, etc. were admitted into evidence. No other evidence was adduced and the matter was submitted to the district court. Judgment was signed on July 7, 1976 and appeal taken July 19, 1976.
The trial court denied plaintiff relief and in its reasons for judgment based its conclusion on the doctrine of laches. Further, the trial court pointed out that although there was no formality of termination as prescribed by Article 14, Section 15.1 (et seq.) of the 1921 Constitution (adopted by article 10 of the 1974 Constitution) adhered to in this case, plaintiff by allowing almost two years to pass before passing his claim and by maintaining inconsistent positions as regards his status of employment with the City during those two years would be barred from recovery by the application of laches. The trial court found specifically that there was no effective dismissal, and any suspension lapsed after 90 days. See R.S. 33:2500 and La.Const. 1921, Art. 14, Sec. 15.1(30).
It is apparent from the record that plaintiff's guilty plea of November 20, 1972 and serving sentence pursuant thereto in effect terminated his employment. It would take an eccentric imagination indeed to suppose one could perform the duties of a law enforcement *35 officer and recover compensation for such while serving time for an offense which was his duty as a law enforcer to deter.
Further, all actions by the plaintiff subsequent to his release from prison in seeking other employment and requesting return of pension funds to which he was entitled as a "former policeman" indicate that the plaintiff had consciously abandoned employment with the Opelousas Police Force.
Plaintiff relies on Bradford v. City of Shreveport, 305 So.2d 487 (La.1974) in urging that the trial court erred in applying the doctrine of laches. The criteria as outlined in Bradford, supra, to establish laches is that the party pleading such a defense must establish (1) unreasonable delay, and (2) substantial prejudice to or upset of the City's fiscal affairs.
Plaintiff does not urge that the first criteria was not met but that the burden of proof of the second criteria was not met. The trial court ably pointed out that Bradford, supra, dealt with a claim for recovery of overtime pay and not reinstatement, which necessarily means a duplication of salaries for the same position for a specific period of time. Further, the trial court pointed out another circumstance peculiar to this case in that plaintiff has maintained inconsistent positions as to his status in his dealing with the City of Opelousas, i.e., retrieval of pension funds, not attempting to work after serving his sentence, etc. This inconsistency or acquiescence is recognized as being an element which gives rise to the application of laches. 30A C.J.S. Equity § 117 et seq.
It is our jurisprudence that the doctrine of laches is based upon the sound public policy that a claimant should pursue his action for relief with all diligence and speed so that funds normally paid to claimant may not be diverted to an equally valid and lawful public purpose thereby upsetting the orderly fiscal processes of government. See Devillier v. City of Opelousas, 247 So.2d 412 (La.App. 3 Cir. 1971) and cases cited therein. The jurisprudence is also to the effect that laches is an equitable doctrine the application of which rests in the sound discretion of the trial court. Molero v. Bass, 322 So.2d 452 (La.App. 4 Cir. 1975). The record reveals circumstances peculiar to this case which give rise to the doctrine of laches; the trial court so found; we do not disturb the trial court's judgment in a discretionary decision unless manifestly erroneous.
Upholding the trial court in this respect is dispositive of all other allegations of error; therefore, discussion of remaining allegations of error is pretermitted; costs of appeal taxed to plaintiff-appellant.
JUDGMENT AFFIRMED.