426 So.2d 1318 (1983)
The CITY OF NEW ORLEANS and the Honorable Ernest N. Morial, Mayor of the City of New Orleans
v.
The STATE of Louisiana.
No. 82-CA-2716.
Supreme Court of Louisiana.
January 10, 1983.
Rehearing Denied March 11, 1983.
*1319 William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, 1st Asst. Atty. Gen., Ronald C. Davis, Lois C. Davis, Asst. Attys. Gen., Louisiana Dept. of Justice, for defendant-appellant.
Salvador Anzelmo, City Atty., Douglas P. Wilson, Chief Deputy City Atty., Galen S. Brown, Deputy City Atty., for plaintiff-appellee.
William J. Doran, Jr., and William T. Kivett, Baton Rouge, for Police Jury Association of La., intervenor-appellee.
R. Gordon Kean, Jr., Charles S. McCowan, Jr., Baton Rouge, Lydia Taylor, Shreveport, T. Allen Usry, New Orleans, for Mun. Ass'n, intervenor-appellee.
WATSON, Justice.
The City of New Orleans brought this suit contending that various state statutes which mandate payments by the City for state services violate Art. 6, § 6 of the 1974 Constitution of Louisiana which provides:
"The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter."
The trial court declared the following acts of the Louisiana legislature, or portions thereof, to be unconstitutional interferences with the home rule charter of the City of New Orleans and in violation of Art. 6, §§ 4 and 6 of the Louisiana Constitution of 1974: Act 97 of 1948, LSA-R.S. 13:1374; part of Act 82 of 1950, LSA-R.S. 13:1568, 1578, 1584 and 1587; Act 165 of 1950, LSA-R.S. 33:1621 and 1623; Act 311 of 1966, LSA-R.S. 15:111 and 112; Act 143 of 1975, LSA-R.S. 13:1383; part of Act 44 of 1977, LSA-R.S. 13:1302; part of Act 267 of 1979, LSA-R.S. 13:1587.1(A) and (B); part of Act 229 of 1979, LSA-R.S. 18:59(1); Act 473 of 1980, LSA-R.S. 33:1525; Act 122 of 1981, LSA-R.S. 16:71(B), (C) and (D); Act 295 of 1982, LSA-R.S. 47:1910.2; Act 865 of 1982, LSA-R.S. 36:209(M)(4).[1]
Three other acts were declared to be not only in violation of the Constitution of 1974, but in violation of Art. 14, § 22 of the Louisiana Constitution of 1921, to-wit: Act 75 of 1952, LSA-R.S. 13:1371; Act 76 of 1952, LSA-R.S. 13:1372; Act 306 of 1972, LSA-R.S. 47:1910.
*1320 The acts declared unconstitutional require the City to pay various sums, including salaries of: the messengers of the Criminal District Court; the coroner and his employees; the clerks and deputy clerks of the Criminal District Court; jury commissioners and secretary to the Board of Jury Commissioners of Criminal District Court; the clerk and other personnel of Juvenile Court; the Criminal Sheriff, deputies, assistants and clerks; the District Attorney, assistant district attorneys, clerks, stenographers, special officers and other expenses of that office. Additionally, the City must pay: additional compensation to each crier of Civil District Court; part of the salaries of permanent employees of the Registrar of Voters; a sum for salaries and other expenses of the Board of Assessors; and $350,000 annually to the City Park Improvement Association. The City is also required to provide quarters for the Orleans Parish juvenile court and the Criminal District Court.
The State has appealed from the declaration of unconstitutionality. The City argues that its home rule charter gives it the exclusive right to regulate matters of local concern, and the payments mandated by the legislature unconstitutionally affect the organization of its government.
Intervening on behalf of the City are the Louisiana Municipal Association and The Police Jury Association of Louisiana, Inc. Aligned with the State's position is the Orleans Parish Criminal Sheriff, intervenor-appellant.
Art. 14, § 22 of the Louisiana Constitution of 1921 provided in pertinent part:
"Subject to the limitations elsewhere contained in this Constitution, the City of New Orleans is hereby declared to have a home rule charter consisting of Act 159 of 1912 as amended through the Regular Legislative Session of 1950, which said home rule charter may be amended or replaced only as hereinafter provided. Reference in this Section of Act 159 of 1912, as amended through the Regular Legislative Session of 1950, shall not be construed as placing said Act into or making it a part of this Constitution.
"The City of New Orleans, in addition to the powers expressly conferred upon it by Act 159 of 1912, as amended through the Regular Legislative Session of 1950, shall have the right and authority to adopt and enforce local police, sanitary and similar regulations and to do and perform all of the acts pertaining to its local affairs, property and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions. The City of New Orleans shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law.
"Nothing contained in this section shall be construed as giving to the City of New Orlaens any rights, powers, authority or jurisdiction over any constitutional officers, boards and commissions, their deputies, subordinates and employees, or over any State, district and parochial officers, boards, commissions and funds, their deputies, subordinates and employees. The amounts to be appropriated and paid by the City of New Orleans for the expenses, including salaries and maintenance, of constitutional officers, boards, commissions, their deputies, subordinates and employees and State, district and parochial officers, boards, commissions and funds, their deputies, subordinates and employees, shall not, without the approval and consent of said City, be increased beyond the amounts which at the date of the adoption of this constitutional amendment are required to be contributed by the City; nor shall such amounts be reduced by the City without the consent of the Legislature."
It is clear in the above article that: (1) the New Orleans home rule charter itself was not a part of the 1921 Constitution; and (2) home rule is subject to other constitutional limitations. See Buras v. Orleans Parish Democratic Executive Com., 248 La. 203, 177 So.2d 576 (1965). The trial court erred in holding that three of the acts were in violation of the Louisiana Constitution of 1921.
*1321 The 1974 Louisiana Constitution provides that local governmental subdivisions with home rule charters retain the "... powers, functions and duties in effect when this constitution is adopted...." Art. 6, § 4, LSA-Const.1974. Thus, the City had the same duties after adoption of the 1974 Constitution that were imposed under the 1921 Constitution. All of the contested acts stem from legislation originally enacted prior to the effective date of the 1974 Constitution.[2]
City of Shreveport v. Kaufman, 353 So.2d 995 (La., 1977) considered the affect of the 1974 Constitution on local home rule governments. Justice Tate, a delegate to the constitutional convention, stated that the "... new constitution's approach thus represents a broad change in the philosophy of local government..." by granting local governmental subdivisions "broad residual powers". 353 So.2d at 996 and 997. However, the residual powers are only those which are not:
"(a) inconsistent with the 1974 constitution or
"(b) denied them by general legislation. Art. 6, Sections 4, 5(E), 7(A)." 353 So.2d at 997.
"The [constitutional] convention used the principle [of plenary legislative power] as its basic starting point, and a narrow construction of legislative power under the document would thwart its purpose of giving more flexibility to the legislature." Professor W. Lee Hargrave, 36 La.L.Rev. 533.
Art. 6, § 9 of the Louisiana Constitution of 1974 entitled "Limitations of Local Governmental Subdivisions" provides in part (B):
"Notwithstanding any provision of this Article, the police power of the state shall never be abridged."
This provision must be considered in connection with Section 6 of that Article, relied upon by the City. The autonomy of local governmental subdivisions with home rule charters is limited by general legislation enacted under the State's police power.
The only restriction on the State's power to enact legislation requiring the expenditure of funds by local political subdivisions is found in Art. 6, § 14, of the Louisiana Constitution of 1974, entitled "Increasing Financial Burden of Political Subdivision", which reads as follows:
"No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board."
The salaries involved here are being paid to State employees and not to City employees. Since the increased expenditures by the City are not for its "political subdivision employees", the above limitation is inapplicable.
"... [I]n the absence of a particular constitutional provision that limits the power of the legislature to act in the respects assailed, a legislative action cannot be invalidated as contrary to the state's constitution." Hainkel v. Henry, 313 So.2d 577 at 579 (La., 1975). "Complete legislative power, except as limited by the Constitution, lies within the state legislature...." State ex rel Guste v. Legislative Budget Com., 347 So.2d 160 at 164 (La., 1977). The legislative acts mandating these payments by the City to the State's employees and offices constitute a valid exercise of the State's police power. The State functions which are partially funded by the City under the challenged acts provide significant *1322 services and benefits to the City. Hence, the fiscal burden imposed by the legislature on the City is equitably justifiable, as well as constitutional.
The trial court erred in declaring the legislative acts unconstitutional.
For the foregoing reasons, the judgment of the trial court herein is reversed and vacated.
REVERSED AND VACATED.
DIXON, C.J., and MARCUS and BLANCHE, JJ., concur.
DENNIS, J., concurs with reasons.
LEMMON, J., dissents.
CALOGERO, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur.
The City of New Orleans is a "local governmental subdivision which operates under a home rule charter," and the legislature is prohibited from enacting a "law the effect of which changes or affects the structure and organization or the particular distribution or redistribution of the powers and functions" of its government. Art. 6 § 6, La. Const.1974. However, the statutes in question do not constitute this type of law. The statutes require the local government to subsidize functions of state government such as the administration of justice, law enforcement, assessment of taxes and voter registration. They do not interfere with the internal management of local government or with the compensation of its employees. Compare the statutes at issue to those found unconstitutional in LaFleur v. City of Baton Rouge, 124 So.2d 374 (La. App. 1st Cir.1960) and Letellier v. Parish of Jefferson, 254 La. 1067, 229 So.2d 101 (1969). Moreover, the subjects of the statutes at issue here are matters of statewide concern rightfully amenable to regulation by the state within its police power. Article 6 § 9. See the remarks of Delegate Casey in the Proceedings of the Constitutional Convention of 1973, Fifty-Fifth Day, Vol. XVIII, pp. 21-22. See generally R. Gordon Kean, Local Government and Home Rule, 21 Loy.Law Rev. 63 (1975).
I respectfully disagree, however, with the majority's analysis of Article 6, Section 4 of the 1974 Louisiana Constitution. In its opinion this section, which provides that each local government with a pre-existing home rule charter "shall retain the powers, functions and duties in effect when this constitution is adopted," constitutionally saddles such local governments with statutory obligations in being upon the effective date of the constitution. I believe this to be incorrect and that Article 6 § 4 merely was intended to preserve for the local government whatever powers, functions and duties it had by virtue of its home rule charter.
The clear thrust of the local government sections in the new constitution is to expand the autonomy of local government. There is an express rejection of the "creature of the state" theory in favor of one which favors an emphasis on decentralized local control. There is no evidence in the debates which surrounded Article 6 § 4 that there was any intention to exclude cities with existing home rule charters from benefits which the new constitution bestowed upon others which had yet to adopt charters. Rather, the overriding impetus for this section was to assure that cities with existing charters would not lose any of their authority in the transition to the new constitution. See 7 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 1319-40. The purpose of Article 6 § 4 is to continue in effect the substantive authority by which existing home rule charters were adopted and to accord them such additional powers and functions as were granted other local governmental subdivisions under the new constitution. See Kean, supra at 67; Comment, Exclusive Powers of Louisiana Home Rule Municipalities and Parishes, 23 Loyola Law Review 961, 977 (1977).
CALOGERO, Justice, dissenting.
I respectfully dissent, being of the opinion that the various state statutes which *1323 require the City of New Orleans to pay for state services are unconstitutional.
As Justice Dennis notes in his concurrence, the 1974 Louisiana Constitution, and particularly the local government section therein, sought to expand rather than retract local autonomy. Specifically, Art. 6 § 6 provides that:
The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local government subdivision which operates under a home rule charter. (Emphasis provided.)
I can perceive of no more odious form of "affect[ing] the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision ..." than legislatively saddling local governments with financial obligations that are not of their own making.
The power to raise and spend municipal taxes and revenues of the City of New Orleans is a local power within the exclusive jurisdiction of the City. The home rule charter provides for the adoption of an annual budget, for the budgeting of revenues for financial administrative procedures, for the acquisition and management of City immovable properties, for the control over the structure and organization of city government and for distribution of its powers and functions. When the City is obligated to subsidize state functions instead of funding municipal services, the structure and organization of City government is altered by diverting funds from local municipal needs to meet those state functions and dictates.
The statutes in this case set unfunded mandates upon the City of New Orleans to provide revenues or property for state functions. Those mandates interfere impermissibly with the City's fiscal affairs, a matter at the very heart of the structure and organization of the City.
Accordingly, I find the statutes in question unconstitutional and respectfully dissent.
NOTES
[1] The trial judge apparently intended to declare § 4 of Act 865 of 1982 unconstitutional. That provision requires the New Orleans City Council to appropriate funds to the New Orleans City Park Improvement Association. LSA-R.S. 36:209 M, enacted by § 2 of Act 865, has no subsections. It transferred the Association to the Department of Culture, Recreation and Tourism.
[2] For example, Act 473 of 1980 relating to the office of criminal sheriff, intervenor, had its origin in Act 294 of 1946.