427 So.2d 1267 (1983)
Bill RUBY, et al., Plaintiffs-Appellants,
v.
The CITY OF SHREVEPORT, Defendant-Appellee.
No. 15176-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
Writ Denied April 15, 1983.
Peters, Ward, Bright & Hennessy by J. Patrick Hennessy, Shreveport, for plaintiffs-appellants.
Charles C. Grubb, City Atty. by L. Edwin Greer, Shreveport, for defendant-appellee.
Before MARVIN, FRED W. JONES, Jr., and NORRIS, JJ.
NORRIS, Judge.
In this action for overtime pay, thirty full time Shreveport police officers appeal a judgment sustaining an exception of no cause of action. We reverse and remand.
These officers, all of the grade of Captain or below, based their claim on La.R.S. 33:2213:
The maximum hours of work required of any full-time paid patrolman, patrolman first class, sergeant, lieutenant, or captain, or other employee of the police department, except those employed in a position, grade or class above that of captain, in any municipality affected by this Subpart, shall be forty hours in any one calendar week. In cases of emergency, any employee may be required to work in *1268 excess of the maximum. For each hour so worked the employee shall be paid at the rate of one and one-half times his usual salary, to be determined by reducing his monthly salary to an hourly scale.[1]
The trial court reasoned that the city of Shreveport, governed by a home rule charter enacted under Art. VI, § 6 of the 1974 Constitution, had the exclusive right to control its "structure" and "organization" thereby rendering La.R.S. 33:2213 inapplicable to the city.
The issues presented concern whether or not the City is subject to La.R.S. 33:2213 and the applicability of Art. VI § 14 of the 1974 Constitution to political subdivisions which have adopted home rule charters.
Prior to January 1, 1975, the effective date of the present constitution, the provisions of the Louisiana Constitution of 1921 specifically granting to certain home rule governments authority over local "structure and organization," had been interpreted to include such matters as the regulation of pay of employees as being exclusively the responsibility of the specially endowed home rule entity. Thus, a special legislative statute creating a pension plan for Jefferson Parish firemen was found to be unconstitutional [Letellier v. Jefferson Parish, 254 La. 1067, 229 So.2d 101 (1969)], and a general legislative statute fixing minimum salaries for firemen was held inapplicable to the city of Baton Rouge [LaFleur v. City of Baton Rouge, 124 So.2d 374 (La. App. 1st Cir.1960) ].
The applicability of La.R.S. 33:2213 to the city of Shreveport was previously before the Supreme Court in Bradford v. City of Shreveport, 305 So.2d 487 (La.1974), and was decided adversely to the city for the following reasons:
Neither decision [Letellier and LaFleur, supra] controls here. The grants of home rule to Jefferson Parish and the City of Baton Rouge are almost identical and provide that,
[s]ubject to the constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions...,
the local authorities may draft and adopt appropriate plans of government. Thus, the state constitution reserves to the state final authority over all matters relating to the powers and functions of local government, but delegates exclusive authority over matters of structure, organization, and distribution of municipal powers to the local governments. Unlike the constitutional provisions relating to Baton Rouge and Jefferson Parish, the grant of home rule to the City of Shreveport makes no express delegation to the city of exclusive authority over such matters of internal structure, organization, and distribution of municipal powers. Thus, applying the established rule that whatever powers of government are not expressly granted to a city remain with the state, we find that the City of Shreveport is without the authority to regulate overtime pay for policemen to the exclusion of state law. Therefore, La.R.S. 33:2213, requiring time-and-a-half overtime pay for policemen, applies here. 305 So.2d at 491-492 [Footnote omitted.] [Brackets added.]
The city argues that its adoption of a new home rule charter under the 1974 Constitution mandates a result contrary to Bradford, contending that Art. VI, § 6 extended the "structure and organization" concept, which Bradford previously recognized was applicable to Baton Rouge and Jefferson, to any local government subdivision operating under a home rule charter.
Art. VI, §§ 5 and 6 provide in part:
Section 5. (A) Authority to Adopt; Commission. Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section. The governing authority of a local governmental subdivision may appoint a commission to *1269 prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission.
* * * * * *
(E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution. [Emphasis added.]
Section 6. The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
The City says that because pay and working conditions of its policemen are matters of "structure and organization," La.R.S. 33:2213 cannot be applicable to the City because the 1974 Constitution grants exclusive control of such matters to home rule municipalities and forbids the state to encroach upon such matters.
The policemen contend that Sections 5 and 6 are expressly qualified and limited with regard to municipal policemen by the provisions of Section 14 of Art. VI which provides:
No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivision employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board. [Emphasis added.]
The policemen further argue that under Section 14 the legislature has expressly reserved the power to legislate regarding wages, working conditions and benefits for all municipal policemen, including those in home rule cities.
The difficult issue of reconciling Section 14 with Sections 5 and 6 has been recognized by legal scholars.[2] The question is whether Section 14 exempts the pay of police and firefighters from the coverage of Section 6 because adequate police and fire protection are matters of statewide concern. We are aware of Spillman v. City of Baton Rouge, 417 So.2d 1212 (La.App. 1st Cir. 1982); and Tull v. City of Baton Rouge, 385 So.2d 343 (La.App. 1st Cir.1980), but conclude that these decisions are not dispositive of this issue. With regard to Tull, Professor Murchison has pointed out in 42 La.L. Rev. at p. 579:
Of course, none of the Tull opinion's rationales addressed the even more difficult question suggested above: whether section 14 exempts the pay of police and firefighters from the coverage of section 6. The reason for that omission is obvious: the plaintiff failed to raise the issue. Nonetheless, the question is one that the state's courts will undoubtedly have to face at some point...
New Orleans Firefighters Association, et al. v. Civil Service Commission of the City of New Orleans, et al., 422 So.2d 402 (La. 1982), interpreted the intent and purpose of Art. VI, § 14:
This section acts as a limitation upon the otherwise plenary law making power of the Legislature recognized by Art. 3 § 1 of the Constitution. It provides that legislation increasing a political subdivision's employee benefits shall not become *1270 effective until approved by its governing authority or until the legislature appropriates funds for the purpose.
The provision contains an exception, however, which reserves to the Legislature its power to enact laws "providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen..." Id. The language and logic of this provision, as well as the proceedings in the convention which drafted the constitution, indicate that the law making power of the Legislature is not qualified, either conceptually or geographically, on these subjects.

* * * * * *
There is nothing in the wording of Art. 6 § 14 that restricts the power of the legislature to enact minimum wage and working condition laws for firemen [policemen]. On the contrary, this power is expressly reserved to the legislature as an exception to the provision's restraint upon laws increasing the financial burden of political subdivisions.
The subject matter left by Art. 6 § 14 to the legislature's prerogative, and the policy choices inherent in any action in that area, require that no limitations be placed upon the legislature's power regarding firemen's [policemen's] minimum wage and labor standards statutes. In order to set a floor under wages and eliminate substandard labor conditions in fire departments [police departments] generally, it is necessary that the legislature be empowered to deal with such issues comprehensively. If the law-making branch were restricted either by geographical limitation or the policy of other agencies in considering socioeconomic data and formulating fair labor standards, it would be impossible for it to establish a minimum wage or a standard working condition pursuant to its own conception of state policy. Since the constitution plainly calls for the legislature to establish state wide rules for the measurement of firemen's [policemen's] wages and working conditions, we conclude that its power in this regard is exclusive.

* * * * * *
The record of the convention proceedings indicates that the legislature's power to set minimum wage and labor standards prevailed because of the obviously compelling state interest in providing citizens with more effective police and fire protection. In expressing variants of this theme, several delegates deplored the failure of local governing authorities to give these needs a higher priority than other community programs, while others called attention to the risks of disparate levels of local fire and police protection resulting from lack of general legislative oversight of minimum standards. However, the driving force in retaining the legislative prerogative was a widely perceived need for state government to address vigorously the problems of rising crime, riots and other public disorders which had become prevalent in the 1960's and early 1970's.
We conclude that the fire and police minimum wage provision of Art. 6 § 14 is not only an exception to the home-rule financial autonomy created by the remainder of the section, but also is a positive reaffirmance of the plenary power of the legislature to guarantee adequate fire and police protection for all citizens of Louisiana...
... However, the plenary power of the Legislature to enact minimum wage and labor standards laws for firemen is reserved by the constitution...
* * * * * *
...Accordingly, we conclude that these provisions constitute an exercise of the legislature's plenary power to enact minimum wage and working condition laws for municipal firemen and policemen. They are remedial and humanitarian in purpose and must not be interpreted narrowly. 422 So.2d 406-413 [Brackets added.] [Emphasis added.] [Footnotes omitted.]
More recently, in City of New Orleans v. State of Louisiana, 426 So.2d 1318 (La. *1271 1983), the Supreme Court reversed a trial court ruling which had held unconstitutional certain legislative statutes that required the City of New Orleans, a home rule city, to pay salaries of some state employees. There, the court discussed the plenary legislative power in Art. VI, § 14 of the Constitution:
* * * * * *
"The [constitutional] convention used the principle [of plenary legislative power] as its basic starting point, and a narrow construction of legislative power under the document would thwart its purpose of giving more flexibility to the legislature." Professor W. Lee Hargrave, 36 La.L.Rev. 533.
Art. 6, § 9 of the Louisiana Constitution of 1974 entitled "Limitations of Local Governmental Subdivisions" provides in part (B):
"Notwithstanding any provision of this Article, the police power of the state shall never be abridged."
This provision must be considered in connection with Section 6 of that Article, relied upon by the City. The autonomy of local governmental subdivisions with home rule charters is limited by general legislation enacted under the State's police power.

The only restriction on the State's power to enact legislation requiring the expenditure of funds by local political subdivisions is found in Art. 6, § 14, of the Louisiana Constitution of 1974, ... 426 So.2d at 1321 [Emphasis added.]
Under these pronouncements of the Supreme Court, we conclude that Art. VI, § 14 contains an express reservation to the state of its plenary and/or police power to legislate minimum wages, working conditions and retirement benefits for municipal policemen. This plenary power is applicable even to home rule cities, notwithstanding the provisions of Sections 5 and 6. By enacting La.R.S. 33:2213, the state has exercised its plenary power. It therefore follows that any policy formulated by Shreveport contrary to La.R.S. 33:2213 is inconsistent with the constitution as well as being an ultra vires act.[3]
Accordingly, the judgment sustaining the exception of no cause of action is reversed. We overrule the exception and remand this action to the district court for further proceedings consistent with this opinion. Costs of this appeal in the amount of $25 are assessed against the City of Shreveport.
JUDGMENT REVERSED AND REMANDED.
NOTES
[1] Amended by Acts 1976, No. 669 § 1.
[2] See Murchison, Local Government Law, 42 La.L.Rev., 565, 579; Kean, Local Government and Home Rule, 21 Loyola L.Rev., 63; Dendy, Exclusive Powers of Louisiana Home Rule Municipalities and Parishes, 23 Loyola L.Rev., 961.
[3] An ultra vires act of a municipality is one which is beyond the powers conferred upon it by law. Charles v. Town of Jeanerette, Inc., 234 So.2d 794 (La.App.3d Cir.1970).