Dear Mr. Ponder:
You requested the opinion of this office concerning the constitutionality of a state department action mandating an increase in expenditures by a local governing authority.
You advised that House Resolution 110 of the 2001 Regular Session of the Louisiana Legislature requested that the Department of State Civil Service ("State Civil Service") conduct a job study of registrars of voters' employees and report the results to the House Committee on House and Governmental Affairs prior to the 2002 Regular Session. You further advised that State Civil Service issued a regulation implementing raises for registrars of voters' employees effective March 18, 2002 thereby imposing an unfunded mandate of salary increases for registrar of voters employees. Those raises were not included in the 2002 budget for the City of Baton Rouge/Parish of East Baton Rouge (the "City/Parish") nor did the City/Parish governing authority enact an ordinance or adopt a resolution relative to same. It is our further understanding that the legislature did not appropriate additional funds to pay the cost of the raises.
Your first question is whether the action of State Civil Service violates La. Const. Art. VI, Sec. 14, which provides as follows:
 (A) No law or state executive order, rule, or regulation requiring increased expenditures for any purpose shall become effective within a political subdivision until approved by ordinance enacted, or resolution adopted, by the governing authority of the affected political subdivision or until, and only as long as, the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided, or until a law provides for a local source of revenue within the political subdivision for the purpose and the affected political subdivision is authorized by ordinance or resolution to levy and collect such revenue and only to the extent and amount of such revenue. This Section shall not apply to a school board.
(B) This Section shall not apply to:
 (1) A law requested by the governing authority of the affected political subdivision.
 (2) A law defining a new crime or amending an existing crime.
 (3) A law enacted and effective prior to the adoption of the amendment of this Section by the electors of the state in 1991.
 (4) A law enacted, or state executive order, rule, or regulation promulgated, to comply with a federal mandate.
 (5) A law providing for civil service, minimum wages, hours, working conditions, and pension and retirement benefits, or vacation or sick leave benefits for firemen and municipal policemen.
 (6) Any instrument adopted or enacted by two-thirds of the elected members of each house of the legislature and any rule or regulation adopted to implement such instrument or adopted pursuant thereto.
 (7) A law having insignificant fiscal impact on the affected political subdivision. (Emphasis added)
As to the type of action actually taken by State Civil Service, we refer you to "A Study of State Civil Service in Response to HOUSE RESOLUTION NO. 110 of 2001" (the "Study") which indicates that State Civil Service held a meeting with representatives of the Department of Elections, the Secretary of State's office and various staff and registrars throughout the State. The consensus of the meeting was that pay levels for most employees were inadequate to recruit and retain employees. State Civil Service suggested that the most efficient and rapid solution was to use "agency delegated classification authority" vested in the Department of Elections to move the employees from the classification of Voter Registration Specialist to higher paid existing generic clerical titles. The existing generic clerical job titles were representative of the job duties and responsibilities of the Voter Registration Specialist positions. After the employees moved from the Voter Registration Specialist classification to the generic clerical classification, the classification of Voter Registration Specialist would then be abolished. Pre-approval from State Civil Service was not necessary for these changes to occur. It does not appear from the information that has been supplied to this office that State Civil Service adopted any rule or regulation with regard to these positions.
We would suggest that the action of State Civil Service does not constitute a state executive order, rule or regulation for purposes of La. Const. Art. X, Sec. 10 as it does not appear that State Civil Service imposed a mandate that the classifications be changed. Nor was there a rule or regulation adopted by the Department of Elections. The action was taken by the Department of Elections as part of their "agency delegated classification authority". Thus it does not appear that there was a violation of La. Const. Art. VI, Sec. 16. See discussion in Polk v.Edwards, 626 So.2d 1128 (La. 1993).
However, assuming that the above described actions do constitute a "rule or regulation" for purposes of Art. VI, Sec. 16, exceptions (B)(1) through (6) to the constitutional provision are not applicable in this situation. We specifically concur with your conclusion that the exception contained in (B)(5) only applies to firemen and municipal policemen.
The question then becomes: does the regulation have a significant fiscal impact on the City/Parish?
According to the Study, the total cost to the State to implement the change on a statewide basis was $59,261.02. The State's share is 50%. Local governments are responsible for their proportionate share of the remaining 50% or $59,261.02. From discussions with House of Representative employees, it appears that 60 registrar employees were affected on a statewide basis, of which 8 were employed by the East Baton Rouge Parish Registrar of Voters Office. The estimated cost to the City/Parish for the non-State portion of the raises for the eight employees was estimated not to exceed $7,500. The 2002 City/Parish budget from all sources is $492,018,390.00.
You advised that the 2002 City/Parish budget has been reduced to 95% of the 2001 budget due to a decline in revenues. You indicated that payment of the raise increases would force the City/Parish to use non-recurring revenue for a recurring purpose and questioned whether such a practice constitutes a significant fiscal impact. As stated earlier, the City/Parish budget for 2002 is approximately $492 million from all sources. By our calculations, an impact of $7,500 would be 0.00152%. Even looking only at the general fund portion of the City/Parish budget (approximately $208 million), the impact of $7,500 is 0.00361%. It is the opinion of this office that raises in the approximate amount of $7,500 which causes a 0.00152% effect on an estimated $492 million budget is not a significant fiscal impact on the City/Parish. See Op.Atty.Gen. No. 00-268.
Your next question is whether the City/Parish is the "appropriate governing authority" to approve the salary increase pursuant to La. Const. Art. X, Sec. 10(C).
La. Const. Art. X, Sec. 10(A) and (C) provide in pertinent part as follows:
 "(A) Rules (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power . . . to adopt a uniform pay and classification plan . . . and generally to accomplish the objectives and purposes of the merit system of civil service . . .
* * *
 (C) Wages and Hours. Any rule or determination affecting wages or hours shall have the effect of law and become effective only after approval by the governor or the appropriate governing authority." (Emphasis added)
In Thoreson v. State Department of Civil Service, 433 So.2d 184
(La.App. 1st Cir. 1983), the Court held that State Civil Service was given a Constitutional trust to establish and implement a uniform classification and pay plan as a non-political body. See also, Gaspardv. Department of State Civil Service, 93-0311 (La.App. 1st Cir. 3/11/94), 634 So.2d 14; Strickland v. State, 525 So.2d 740 (La.App. 1st Cir. 1988). Registrars of voters and their employees are not employees of local police juries or other local government units. In re Bankston,306 So.2d 863 (La.App. 1st Cir. 1974). They are considered to be State employees. City of New Orleans v. State, 426 So.2d 1318 (La. 1983); Op.Atty.Gen. Nos. 87-20, 88-118, 85-558, 85-355; R.S. 18:62. Accordingly, State Civil Service has the exclusive authority, subject to the approval of the governor, to make rules or determinations affecting wages or hours of the employees of the registrars of voters who are in the State classified service.
In this instance, there is no "appropriate governing authority" to approve rules or determinations. With regards to the State system, the Governor must approve rules or determinations. The City/Parish would be the appropriate governing authority under La. Const. Art. X, Sec. 10(C) to approve rules or determinations affecting wages or hours for the Baton Rouge civil service system. It is the opinion of this office that "appropriate governing authority" refers to non-State civil service systems. See Saulter v. Sewerage Water Board, 593 So.2d 767
(La.App. 4th Cir. 1992); Babin v. City of New Orleans, 83-2499 (La.App. 4th Cir. 5/26/94), 637 So.2d 1309.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _____________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
DATE RELEASED: October 9, 2002