816 So.2d 977 (2002)
LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT
v.
LAFAYETTE MUNICIPAL FIRE & POLICE CIVIL SERVICE BOARD.
No. 01-1460.
Court of Appeal of Louisiana, Third Circuit.
May 8, 2002.
*978 Richard D. Chappuis Jr., Voorhies & Labbe, Lafayette, LA, for Plaintiff/Appellee Lafayette City-Parish Consolidated Government.
Marie Candice Hattan, Roy & Hattan, Lafayette, LA, for Defendant/Appellant Lafayette Municipal Fire & Police Civil Service Board.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The defendant, the Lafayette Municipal Fire and Police Service Board (Board), appeals the trial court's judgment in favor of the plaintiff, the Lafayette City-Parish Consolidated Government (LCG), granting it a preliminary injunction. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In 1986, the LCG petitioned the Board to pass a Rule that would reduce the number of annual leave days given to Lafayette Police Officers. At that time, La.R.S. 33:2214(A)(1) required that police department employees be given fifteen days of annual leave, but the LCG and the Board agreed to reduce that number to twelve annual leave days per year.[1] At the request of the Board and the LCG, the legislature enacted La.R.S. 2214.2, which allowed them to agree to provide vacation benefits in accordance with the Lafayette Civil Service System rules.[2] This annual leave policy was in effect until early 1999, when the Board proposed an amendment to the current rule (Rule XVI) that would restore the annual leave to fifteen days per year. After proceeding through the various required formalities, and allowing the LCG ample time to object to the amendment, the Board unanimously passed the amendment to become effective in January 2000.
The LCG filed suit in December 1999, urging that the Board unilaterally acted in July and October 1999, to amend Rule XVI, which violated the previously reached January 1987 agreement and, therefore, violated La.R.S. 33:2214.2, because the 1987 agreement "effectively repealed La. R.S. 33:2214(A) as previously applicable to the Lafayette Police Department." It further argued that the Board's amendment *979 would require it to come up with additional money to fund the annual leave increase and, because the request for funding had not been submitted to the LCG President, the Board could not enforce its amendment as it was contrary to law. The LCG requested a determination of whether the amended Rule XVI was contrary to law and whether the unilateral decision of the Board to adopt the amendment violated its prior agreement with the LCG and violated State law, particularly La.R.S. 33:2214.2. The LCG further requested an injunction, arguing that it would suffer irreparable injury if Rule XVI was permitted to go into effect on January 1, 2000. The trial court granted a stay on December 22, 1999, pending further hearings on the matter. The Board filed a motion for dissolution of the stay order on February 18, 2000.
After a hearing on April 17, 2000, the trial court rendered judgment cancelling and dissolving the stay order previously issued in favor of the LCG, but temporarily restrained the Board from enforcing its amendment until May 12, 2000. At that time, it would be given the opportunity to show cause why a permanent injunction should not be issued.
On May 19, 2000 (a mutually agreed upon later date), the trial court ruled on the requested injunction. It found the issues to be whether the Board could unilaterally adopt a rule which increased the number of annual leave days for police officers, and in doing so, obligate the LCG for the unappropriated fiscal consequences thereof.
The trial court concluded that the Board "has the exclusive authority to adopt rules to provide for leaves of absences in the various classes of the classified service and to provide for annual vacation and sick leave with pay and special leave with or without pay." However, after examining the LCG's Home Rule Charter provisions, the trial court found that the Board's amendment of Rule XVI violated Section 5-06 of the Home Rule Charter, which is in violation of La.R.S. 33:2478, formerly La. Const. art. XIV, § 15.1 of the Louisiana Constitution of 1921, which prohibits the adoption of a Civil Service Board Rule which is contrary to any other provision of law. Therefore, the Board may not adopt a rule which violates the Home Rule Charter. Thus, the Board could not adopt a rule regarding annual leave which obligated the LCG for unappropriated fiscal consequences.
Finding that Section 5-06 of the Home Rule Charter was a prohibitory law, the trial court determined that the LCG need not show irreparable injury and granted its request for a preliminary injunction. The Board, thereafter, timely appealed to this court.

ISSUES
The Board assigns as error:
1. The trial court's issuance of an indefinite temporary restraining order (TRO) enjoining the implementation of an annual leave rule duly enacted by it pursuant to its legislative powers without the mandatory procedural prerequisites set out by the Louisiana Code of Civil Procedure first being met.
2. The trial court's conversion of the TRO into a permanent injunction five months after issuance, based upon its finding that the rule would require LCG to pay additional monies that have not been allotted in violation of the mandatory language of La. Const. art. 6, § 14(A).
3. The trial court's denial of damages arising from the issuance of the TRO which was obtained without compliance with the procedural mandates *980 of the Louisiana Code of Civil Procedure.

LAW AND DISCUSSION
The thrust of the Board's argument is that the TRO/preliminary injunction was improperly issued 1) for failure to follow the proper procedural requirements and 2) because the trial court erred in determining that the home rule charter of Lafayette took precedence over La. Const. art.14, §§ 15.1(8) and (27) and La.R.S. 33:2497, which sets forth the power and authority of the Board. The Board argues that the home rule charter "can not operate to abrogate the provisions of our law pertaining to Constitutionally created Civil Service systems."

Temporary Restraining Order and Damages
The Board urges that the LCG did not properly request a TRO when it originally filed its "Petition for Declaratory Relief and Stay Order" in December 1999, as it did not provide the trial court with a memorandum of authority, or any written brief to support the request for the relief sought; did not notify the Board or its attorney of its intended action; did not provide a copy of its Petition to either the Board or its attorney; and did not afford the Board or its attorney the opportunity to be present when the Petition was presented to the duty judge. The Board claims that "[t]here is no issue that when the duty judge signed the Order presented to him by LCG, the effect was that a Temporary Restraining Order became effective against the Board, enjoining the effective date of the amended rule." La. Code Civ.P. art. 3612(A) states, "There shall be no appeal from an order relating to a temporary restraining order." We have also held that we have "no power to hear an appeal from an order relating to a TRO under any circumstance." Budd Constr. Co., Inc. v. City of Alexandria, 401 So.2d 1070, 1073 (La.App. 3 Cir. 1981), writ denied, 404 So.2d 1262 (La.1981). For the same reasons, the Board's third assignment of error relating to damages associated with the issuance of the order is without merit. Id. See also Vienna Bend Subdivision Homeowners v. Manning, 459 So.2d 1345 (La.App. 3 Cir.1984).

Preliminary Injunction
At the outset we observe that appellate review of the issuance by the trial court of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and is subject to reversal only if it be shown that such discretion has been abused or improvidently exercised.
Concerned Citizens of Rapides Parish v. Hardy, 397 So.2d 1063, 1072 (La.App. 3 Cir.1981).
Initially, we note the provisions of the home rule charter relied on by the LCG pertaining to the incurring of fiscal obligations. Those provisions are found in Section 5-06 of the Lafayette Home Rule Charter and state:
A. No payment shall be made or obligation incurred against any allotment or appropriation except in accordance with the approved operating budget and capital improvement budget and appropriations duly made and unless the president or the president's designee first certifies that there is a sufficient unencumbered balance in such allotment or appropriation and that sufficient funds therefrom are or will be available to cover the claim or meet the obligation when it becomes due and payable. However, this section shall not limit the authority to borrow funds in anticipation *981 of revenues as provided in the general laws of the state. Any authorization of payment or incurring of obligation in violation of the provisions of this charter shall be void and any payment so made illegal; such action shall be cause for removal of any official, officer or employee who knowingly authorized or made such payment or incurred such obligation or who caused such payment to be authorized or made or obligation to be incurred. Such persons shall also be obligated to the City-Parish Government for any amount so paid.
B. Nothing in this charter shall be construed to prevent passage of any ordinance making or authorizing of payments or making of contracts for capital improvements to be financed wholly or partly by the issuance of bonds or to prevent the making of any contract or lease providing for payments beyond the end of the fiscal year. Contracts for services not covered by the public bid law shall be for a period not to exceed the term for which the council members and the president are elected.
C. Deficit spending is prohibited except for emergencies as provided in the section on "Amendments to Operating Budget."
(Emphasis added).
The LCG also relies on La.R.S. 33:2478, formerly La. Const. art. 14, § 15.1(8) (1921), which sets forth the authority of the Board and reads as follows:
Each board may adopt and execute rules, regulations, and orders necessary or desirable effectively to carry out the provisions of this Part, and shall do so when expressly required by this Part. No rule, regulation, or order shall be contrary to, or in violation of, any provision, purpose, or intent of this Part or contrary to any other provision of law. The board may amend or repeal any rule or part thereof in the same manner provided herein for the adoption of the rule. All rules shall be applicable to both the fire and police classified services, unless by express provisions therein, it is made applicable to only one of the services.
A board may adopt any rule, either in its proposed or revised form, after holding a public hearing at which any municipal officer, employee, private citizen, and the state examiner shall be given an opportunity to show cause why the proposed rule, amendment, or any part thereof should not be adopted. Before the board holds this public hearing, it shall furnish at least thirty days notice in advance of the date, time, and place therefor to the mayor, commissioner of public safety, any other municipal commissioner whom the rule may in any way affect, the chief and each station of the departmental service to be affected by the adoption of any such rule, and to the state examiner. A copy of all proposed rules to be discussed at any hearing shall be furnished with all notices. Each notice and copy of proposed rule furnished the various stations of a respective department shall be posted upon the bulletin board of each station for a period of at least thirty days in advance of the hearing.
Within thirty days after the board has adopted any rule, whether it is a new rule or amendment to an existing rule, or an abolition in whole or part thereof, it shall furnish an official copy thereof to all persons and places set forth above.
Rules adopted under the authority of this section shall have the force and effect of law.
(Emphasis added).
The Board, on the other hand, supports its position that it has the full authority to *982 make rules regarding the vacation and annual leave time/pay of its employees also with the provisions of La.R.S. 33:2478. It further points to La.R.S. 33:2497, formerly La. Const. art. 14, § 15.1(27) (1921), which states:
Leaves of Absence. The board shall adopt rules to provide for leaves of absence in the various classes of the classified service. Such rules shall provide for annual vacation and sick leaves with pay, and special leaves with or without pay. They may provide for special extended leaves with or without pay and for special extended leaves with or without pay or with reduced pay for employees disabled through injury or illness arising out of their employment. The right to regulate the time at which any employee may take an annual leave, or any other leave which is not beyond the control of the employee, shall be vested at all times with the appointing authority.
The Board further argues that the Lafayette Home Rule Charter Section 5-06 requiring the president's approval before any payment be made cannot be a "provision of law" within the meaning of La.R.S. 33:2478, because of La. Const. art. 6, §§ 14(A) and (B)(5), which respectively state:
No law or state executive order, rule, or regulation requiring increased expenditures for any purpose shall become effective within a political subdivision until approved by ordinance enacted, or resolution adopted, by the governing authority of the affected political subdivision or until, and only as long as, the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided, or until a law provides for a local source of revenue within the political subdivision for the purpose and the affected political subdivision is authorized by ordinance or resolution to levy and collect such revenue and only to the extent and amount of such revenue. This Section shall not apply to a school board.
This Section shall not apply to:
A law providing for the civil service, minimum wages, hours, working conditions, and pension and retirement benefits, or vacation or sick leave benefits for fireman and municipal policeman.
In its well written opinion, the trial court, after reviewing the statutes discussed above, found:[3]
Reading these statutes in pari materia, it is clear the Civil Service Board has the exclusive authority to adopt rules to provide for leaves of absences in the various classes of the classified service and to provide for annual vacation and sick leave with pay and special leave with or without pay. Therefore, the first part of the inquiry must be answered in the affirmative, that is, the Board may unilaterally adopt a rule which increases the number of annual leave days for police officers. However, it is also clear that the Civil Service Board is prohibited from making any rule contrary to, or in violation of any other provision of law.
. . . .
This provision of the Home Rule Charter is not inconsistent with the Constitution or denied by general law. Accordingly, Section 5-06 of the Home Rule Charter is the applicable law relating to the incurring of obligations by Consolidated Government.
The testimony elicited at the hearing clearly establishes that the Amendment *983 to Article XVI of the Civil Service Rules is in violation of Section 5.06 of the Home Rule Charter. Accordingly, the Amendment is also in violation of R.S. 33:2478 and Article XIV, Section 15.1 of the Louisiana Constitution of 1921 which prohibits the adoption of a Civil Service Board Rule which is contrary to any other provision of law.... A Civil Service Board rule may not adopt a rule which violates the Home Rule Charter. Therefore the Civil Service Board cannot adopt a rule regarding annual leave which obligates Consolidated Government for unappropriated fiscal consequences.
After reviewing the trial court's reasons for judgment, we cannot say that it abused its discretion in issuing a preliminary injunction. Its reasons for doing so were based on sound legal principles and consideration of the competing statutes. We agree with the trial court that the Board can unilaterally adopt rules regarding annual vacation leave, but cannot adopt any rule contrary to any other provision of law, including Section 5-06 of the Lafayette Home Rule Charter.
However, the trial court did not consider La. Const. art. 6 §§ 14(A) and (B)(5) in its analysis. Since it was argued by the Board, we feel it necessary to address that article. The Board argues that the purpose of La. Const. art. 6 §§ 14(A) and (B)(5) is to prevent any municipality from depriving classified fire and police personnel of benefits lawfully conferred upon them by allowing a municipality the ability to refuse to fund it. While we basically agree with that premise, we find additional guidance from the supreme court in New Orleans Firefighters Ass'n v. Civil Service Comm'n of City of New Orleans, 422 So.2d 402, 406-07 (La.1982), where it held:
This section acts as a limitation upon the otherwise plenary lawmaking power of the Legislature recognized by Art. 3 § 1 of the Constitution. It provides that legislation increasing a political subdivision's employee benefits shall not become effective until approved by its governing authority or until the legislature appropriates funds for the purpose.
The provision contains an exception, however, which reserves to the legislature its power to enact laws "providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen...." Id.

. . . .
There is nothing in the wording of Art. 6 § 14 that restricts the power of the legislature to enact minimum wage and working condition laws for firemen. On the contrary, this power is expressly reserved to the legislature as an exception to the provision's restraint upon laws increasing the financial burden of political subdivisions.
The subject matter left by Art. 6 § 14 to the legislature's prerogative, and the policy choices inherent in any action in that area, require that no limitations be placed upon the legislature's power regarding firemen's minimum wage and labor standards statutes. In order to set a floor under wages and eliminate substandard labor conditions in fire departments generally, it is necessary that the legislature be empowered to deal with such issues comprehensively.
Article 6 § 14 of the 1974 Louisiana Constitution, referred to in New Orleans Firefighters, originally read:
No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivisions employees, except a law providing for civil service, minimum wages, working conditions, and retirement *984 benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board.
Article 6 § 14 was amended to its present version by vote of the populace on October 19, 1991, and became effective on November 21, 1991. The law remains essentially the same as it pertains to "a law providing for civil service, minimum wages, hours, working conditions, and pension and retirement benefits" adding "vacation or sick leave benefits." We, therefore, conclude that Article 6 § 14 provides an express reservation to the legislature to set minimum vacation and sick leave benefits for municipal policemen. See also Ruby v. City of Shreveport, 427 So.2d 1267 (La. App. 2 Cir.), writ denied, 433 So.2d 154 (La.1983). The legislature provided for minimum vacation leave of fifteen days for police officers in La.R.S. 33:2214(A)(1). However, in 1986, the legislature enacted La.R.S. 33:2214.2, which clearly provides that the Board and the LCG can agree to provide vacation benefits for police officers in accordance with the vacation rules of the Municipal Government Employees' Civil Service System. Those vacation benefits for which the LCG must allow and provide funding would then be the minimum envisioned under Article 6 § 14 of the Louisiana Constitution.
Thus, La. Const. art. 6 §§ 14(A) and (B)(5) do not conflict with the now existing system that authorizes the Board to adopt the rules, but requires the LCG to agree with the Board before any new vacation benefits can be enacted. Since the LCG and the Board have not yet agreed on the new vacation benefits for police officers, those benefits cannot be changed. Note that we do not address any issues relating to the LCG's failure to act regarding appropriation, as such issues were expressly reserved at the trial level. We only address the propriety of the issuance of a preliminary injunction and find no abuse of discretion by the trial court.

CONCLUSION
The judgment issued in favor of the plaintiff-appellee, Lafayette City-Parish Consolidated Government, granting it a preliminary injunction is, hereby, affirmed. All costs of this appeal are assessed against the defendant-appellant, the Lafayette Municipal Fire and Police Service Board.
AFFIRMED.
COOKS, J., dissents and assigns reasons.
COOKS, J., Dissenting.
La.R.S. 33:2214(A)(1) provides Fire and Police employees are entitled to fifteen days of annual vacation leave. In 1986 La.R.S. 33:2214.2 was enacted, granting an exception to the minimum leave time, on the urging of the Board and LCG. The provision reads:
Except as provided in R.S. 33:2214(A), the Fire and Police Civil Service Board of the city of Lafayette and the governing authority of the city of Lafayette may agree to provide vacation benefits to employees of the police department in accordance with the vacation rules of the Municipal Government Employees' Civil Service System of the city of Lafayette, and such agreement shall serve to supercede the provisions of R.S. 33:2214(A).
(Emphasis added.)
It provided when the Board and LCG agree, the minimum period in R.S. *985 33:2214(A) may be superceded. In 1987, both parties agreed to reduce the statutory minimum annual leave from fifteen days to twelve. Nothing in R.S. 33:2214.2 says once an agreement occurs it lasts in perpetuity until another is perfected. If this were the case, either party could hold the other hostage forever; and in the event the governing authority elects not to agree, as in this case, the Civil Service Board in essence has no authority at all. This is not what the Legislature envisioned when it enacted the exception. When an agreement no longer exists between the Board and LCG, as in this case, then the statutory minimum controls as originally enacted by the Legislature. This is the only way R.S. 33:2214.2 makes sense, otherwise it violates the Constitutional authority granted the Board in La. Const. Art. 14, § 15.27 and the Legislature in La. Const. Art. 6, § 14 as amended in 1991.[1]
NOTES
[1] La.R.S. 33:2214(A)(1) states:

Each employee of the police departments of the municipalities embraced by this Subpart, except the city of Westwego, shall, after having served one year with a respective department, be entitled and given with full pay an annual vacation leave of fifteen days during each calendar year, which shall not be denied to any such employee for any reason whatsoever.
[2] La.R.S. 33:2214.2 states:

Except as provided in R.S. 33:2214(A), the Fire and Police Civil Service Board of the city of Lafayette and the governing authority of the city of Lafayette may agree to provide vacation benefits to employees of the police department in accordance with the vacation rules of the Municipal Government Employees' Civil Service System of the city of Lafayette, and such agreement shall serve to supercede the provisions of R.S. 33:2214(A).
[3] The trial court did not address La. Const. art. 6, §§ 14(A) and (B)(5).
[1] The Legislature by enacting La.R.S. 33:2497 also vested authority exclusively with the Civil Service Board to pass rules relating to annual vacation and sick leave:

The Board shall adopt rules to provide for leaves of absence in the various classes of the classified service. Such rules shall provide for annual vacation and sick leaves with pay ...