STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1620

ALEXANDRIA CIVIL SERVICE COMMISSION

VERSUS

THE HONORABLE EDWARD G. RANDOLPH, ET AL.

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 213,980
CONSOLIDATED WITH NO. 214,680
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Chief Judge Ulysses Gene Thibodeaux, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

Howard N. Nugent, Jr.
P.O. Box 1309
Alexandria, Louisiana 71309
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    Alexandria Civil Service Commission

Barry R. Laiche
Jeremy C. Cedars
P.O. Drawer 1791
Alexandria, Louisiana 71309-1791
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    The Honorable Edward G. Randolph, Jr.,
    Mayor of the City of Alexandria, and
    The City of Alexandria

Angie Rogers Laplace, AAG
P.O. Box 94005
Baton Rouge, Louisiana 70804
**COUNSEL FOR DEFENDANT/APPELLEE**:
    State of Louisiana

Daniel E. Broussard, Jr.
P.O. Box 1311
Alexandria, Louisiana 71309
**COUNSEL FOR INTERVENOR/APPELLEE:**
    Local 1848 of American Federation of State, County and
    Municipal Employees, AFL-CIO

John W. Scott
P.O. Box 171
Alexandria, Louisiana 71309
**AMICUS CURIAE ON BEHALF OF:**
    Louisiana Civil Service League

**GENOVESE, JUDGE.**

This matter arises out of action taken by Edward G. Randolph, Mayor of the City of Alexandria, in proposing Ordinance No. 247-2003 which created two departments within the Division of Personnel and Civil Service. The actions of the Mayor and the City of Alexandria were taken in accordance with Act 390 of the 2001 Legislative Session ("Act 390") and Sections 4-01 and 4-11 of the Home Rule Charter of the City of Alexandria. The Alexandria Civil Service Commission appeals the trial court's judgment in favor of the Mayor and City of Alexandria finding 2001 La. Acts No. 390 and Ordinance No. 247-2003 to be constitutional.

## FACTS

In 1977 the City of Alexandria adopted a Home Rule Charter. In 2003, Mayor Edward G. Randolph ("Mayor") proposed Ordinance No. 247-2003 to reorganize his administration by creating two departments within the Division of Personnel and Civil Service in accordance with 2001 La. Acts No. 390 and Sections 4-01 and 4-11 of the Home Rule Charter. The Alexandria Civil Service Commission ("Commission") objected to the proposed ordinance. A public hearing on the ordinance was held on August 5, 2003.

Prior to the August 2003 public hearing, the Civil Service Commission held a hearing of its own on July 29, 2003, and issued an order ordering the clerk of the Alexandria City Counsel to return the proposed ordinance to the Mayor, and further ordering the Mayor to present his proposed plan to amend the Home Rule Charter to the majority of the electors. In response thereto, on July 30, 2003, Mayor Randolph filed suit individually and on behalf of the City of Alexandria against the Civil Service Commission and obtained a temporary restraining order against the Commission.

1

Following the August 5, 2003 public hearing, the city counsel passed the ordinance. The Alexandria Civil Service Commission then filed suit against Mayor Randolph, the City of Alexandria and the State of Louisiana seeking to have 2001 La. Acts No. 390 and Ordinance No. 247-2003 declared unconstitutional. Local Union No. 1848 of the American Federation of State, County, and Municipal Employees, AFL-CIO, intervened.

The lawsuit initiated by the Mayor and City of Alexandria was consolidated with the lawsuit brought by the Civil Service Commission. Following trial on February 26, 2004, the trial court opined that the Civil Service Commission had failed to prove the unconstitutionality of 2001 La. Acts No. 390 and Ordinance No. 247-2003 by clear and convincing evidence. It is from this judgment that Plaintiff, Alexandria Civil Service Commission, appeals. For the following reasons, we affirm.

## ISSUES

The following issues are presented on appeal:

1. Whether the temporary restraining order should have been issued.

2. Whether the adverse presumption, i.e. the failure of the Mayor to testify, applies.

3. Whether changes to the Alexandria Home Rule Charter must be presented to the voters.

4. Whether the legislature has the authority (by legislative act) to alter the structure or organization of the City of Alexandria operating under its home rule charter.

## LAW AND DISCUSSION

### *Temporary Restraining Order*

The Civil Service Commission contends that the trial court erred in its issuance of a temporary restraining order. However, this issue cannot be reviewed on appeal.

Louisiana Code of Civil Procedure Article 3612 states in pertinent part as

2

follows:

> A. There shall be no appeal from an order relating to a temporary restraining order.

See *Lafayette City-Parish Consol. Government v. Lafayette Mun. Fire & Police Civil Service Bd.*, 01-1460 (La.App. 3 Cir. 5/8/02), 816 So.2d 977, *writ denied,* 02-1565 (La. 9/30/02), 825 So.2d 1194; *Vienna Bend Subdivision Homeowners Assoc. v. Manning*, 459 So.2d 1345 (La.App. 3 Cir. 1984).

Because there is no appeal from an order relating to a temporary restraining order, this court will not consider any issues related thereto.

### *Adverse Presumption*

The Civil Service Commission argues that Mayor Randolph's failure to testify created an adverse presumption that his testimony would not have been favorable to the City of Alexandria. This adverse presumption is well recognized in our law. However, "[s]uch a presumption arises only where (1) the party has the burden of proof and (2) the party has some control over or close relationship to the witness." *Wolfe v. Employers Commercial Union Ins. Co.*, 272 So.2d 714, 715 (La. App. 3 Cir. 1973). Presumptions affect the burden of proof. But, in this case, it is the Commission that has the burden of proving by clear and convincing evidence the unconstitutionality of the act and ordinance, not the Mayor/City of Alexandria. Therefore, the failure to give the presumption is a non-issue since neither the Mayor, nor the City of Alexandria, has the burden of proof in this case.

### *Presentation of Changes to Home Rule Charter to Electors*

The next issue raised by the Civil Service Commission is whether the changes to the Alexandria Home Rule Charter must be presented to the electors (voters) of the City of Alexandria. This issue is addressed and resolved in this court's ruling on the constitutionality, *vel non*, of the act and ordinance set forth below.

3

## *Constitutionality of 2001 La. Acts No. 390  and City Ordinance No. 247-2003*

*Louisiana Constitution Articles VI  and X*

The Civil Service Commission asserts that 2001 La. Acts No. 390 and City Ordinance No. 247-2003, which the Mayor and City of Alexandria relied upon to make changes to the Home Rule Charter, are unconstitutional being in violation of La.Const. art. VI,  § § 5 and 6.  Local Union No. 1848 also contends that the act and ordinance are unconstitutional.

An ordinance and a legislative act are presumed to be constitutional.  *Theriot v. Terrebonne Parish Police Jury*, 436 So.2d 515 (La.1983).  The party attacking the constitutionality of a statute or ordinance has the burden of proving that the statute or ordinance is unconstitutional.  *City of Lafayette v.  Butcher Air Conditioning Co. Inc.*, 392 So.2d 757 (La.App. 3 Cir. 1980).  It is well settled that the burden of proving the unconstitutionality of an act or ordinance is by clear and convincing evidence.  *Theriot*, 436 So.2d 515; *Bolzoni v.  Theriot*, 95-1233 (La.App. 3 Cir. 3/6/96), 670 So.2d 783, *writ denied*, 96-0718 (La. 4/26/96), 672 So.2d 908; *West Central Louisiana Entertainment, Inc.  v.  City of Leesville*, 594 So.2d 973 (La.App. 3 Cir. 1992).  Municipal acts are to be interpreted to sustain validity if susceptible to reasonable interpretation having legal effect.  *Gurst v. City of Natchitoches*, 428 So.2d 502 (La.App. 3 Cir. 1983).

In reviewing the issue of constitutionality, it is necessary to consider both the historical background of the relevant law as well as the current express provisions. The Alexandria Civil Service Commission was originally created by 1954 La. Acts No. 487.  Act 487 was later amended by 1962 La. Acts No. 120, and by 1964 La. Acts No. 396.  In 1974, La.Const. art. VI, §§ 5 and 6 was adopted which provided for a structure of home rule charters for local governments.  It was against this backdrop

that in 1977, with the intention of preserving the civil service system, the Home Rule

Charter for the City of Alexandria was approved by its electorate.

The Alexandria Home Rule Charter, § 4-08, contains the following provision:

> (B) The classified civil service system for the City of Alexandria heretofore established by Act 487 of 1954 as amended by Act 120 of 1962, Act 396 of 1964 and as may be amended by the legislature in the future, is hereby incorporated in this charter and shall continue in full force and effect and be carried out and regulated in accordance with the provisions of said statute, except as may be inconsistent with the provisions of this charter, in which case the charter shall prevail.

Thus, the express language of the Alexandria Home Rule Charter reveals two facts: (1) at adoption, it was recognized that Act 487, which created the civil service commission, had been amended by the legislature on two prior occasions; and (2) the charter anticipated the possibility of future changes to be made and specifically designated the legislature as the proper body to amend Act 487. The charter's only limitation on legislative changes is that any change not be inconsistent with the charter. However, in the event any change is inconsistent with the charter, then the provisions of the charter are to prevail. This express language, which acknowledged historical amendments, anticipated future amendments, addressed potential conflicts, and provided a ranking of authority in the event of conflict, was present when the Home Rule Charter was approved by the voters.

The Civil Service Commission contends that the proposed change in the Home Rule Charter by the Mayor and the City of Alexandria was in violation of La.Const. art. VI, § § 5 and 6, and the Alexandria Home Rule Charter. The Commission further contends that 2001 La. Acts No. 390, which enabled these changes to be made without voter approval, was therefore unconstitutional.

5

Louisiana Constitution Article VI, § 5 provides in part as follows:

> (C) **Adoption; Amendment; Repeal**. A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose.
>
> . . . .
>
> (E) **Structure and Organization; Powers; Functions.** A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this condition.

Louisiana Constitution Article VI, § 6 states:

> **§ 6. Home Rule Charter or Plan of Government; Action by Legislature Prohibited**
>
> Section 6. The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.

The above constitutional provisions prohibit legislative actions which interfere with local governmental subdivisions operating under a home rule charter. However, the constitution does not, as the Civil Service Commission suggests, result in an absolute prohibition from any actions being taken.

A constitutional provision not raised by the Civil Service Commission which contradicts its theory of a blanket prohibition is La.Const. art. X, §15, which specifically authorizes the Louisiana Legislature to enact laws that affect a civil service system. La.Const. art. X, § 15, provides the following:

> **§ 15. City, Parish Civil Service System; Creation; Prohibition**
>
> Section 15. Nothing in this Part [Article 10 of the Louisiana Constitution] shall prevent . . . the establishment by the legislature or by the respective municipal governing authority of a municipal civil service system in one or more municipalities having a population of less than

four hundred thousand, in any manner now or hereafter provided by law.

To the extent that Article X, § 15, may conflict with Article VI, § 6 of the Louisiana Constitution, Article X is a more specific provision addressing municipal civil service.  As such, in the event of a conflict, La.Const. art. X prevails.

The relevant articles of the Louisiana Constitution do not mandate an absolute prohibition of legislative authority concerning civil service systems.   This reading is consistent with the express language of Section 4-08 of the Alexandria Home Rule Charter cited above  which specifically allows the Louisiana Legislature to amend 1954 La. Acts No. 487.  Thus, by enacting 2001 La. Acts No. 390, the legislature was exercising the authority expressly vested in it by the Home Rule Charter.

### _Changes in the structure and powers and functions of a governmental subdivision  operating under a home rule charter_
*Alexandria Home Rule Charter Sections 4-01, 4-08 and 4-11*

The Civil Service Commission strongly argues that the result of Ordinance No. 247-2003 is that it affects the structure and organization of the Alexandria Home Rule Charter and thereby changes the distribution of home rule powers and functions in violation of La.Const. art. VI, § 6, discussed above.   The Commission further contends that Ordinance No. 247-2003 is an unauthorized reorganization of the personnel and human resource administration contrary to Section 4-11(A) of the Alexandria Home Rule Charter.  We do not agree.

Section 4.11 of the Alexandria City Charter sets forth certain powers of the Mayor as follows:

> (A) The Mayor shall have the right as chief executive officer to propose to the city council the creation, change, alteration, combination or abolition of city departments, offices or agencies, including those provided by the Charter.

Ordinance No. 247-2003 contains the following provision:

WHERE AS, it is believed that these ends may be accomplished by an administrative reorganization that abolishes the current position of Director of Personnel/Civil Service, and creates two (2) separate departments within the Division of Personnel and Civil Service, namely the Department of Human Resources and the Department of Civil Service;

Ordinance No. 247-2003 also provided for the creation of a Director of Personnel and Human Resources to be the head of the Division of Personnel and Civil Service. Further, the ordinance specifically provided that the Department of Civil Service shall be headed by the Director of the Alexandria Civil Service Commission, who is not a division head, as provided in Act 390. The Civil Service Commission argues that the director of the Alexandria Civil Service Commission must also be the director of the Personnel and Civil Services; otherwise, a consequence of the ordinance would be a demotion of the Director of the Division of Personnel and Civil Service without a justified cause. We disagree.

Section 4-01 and Section 4-08 of the Alexandria Home Rule Charter place the Division of Personnel within the executive branch of the government of the City of Alexandria. The provisions governing the Personnel Division are contained within Section 4-08 of the charter which states in part:

(A) There shall be a division of personnel and civil service headed by a director of personnel.

(B) The classified civil service system for the City of Alexandria heretofore established by Act 487 of 1954 as amended by Act 120 of 1962, Act 396 of 1964, and as may be amended by the legislature in the future, is hereby incorporated in this charter and shall continue in full force and effect and be carried out and regulated in accordance with the provisions of said statutes, except as may be inconsistent with the provisions of this charter, in which case the charter shall prevail.

(C) Only the following positions shall not be in the classified personnel system of the city:

8

(1) The mayor's secretary and any assistant to the mayor;

(2) The City Clerk and the secretary to the city clerk;

(3) The city attorney and any assistant city attorneys;

(4) Directors of divisions created in accordance with the provisions of this charter and one secretary for each said director.

Clearly, under the express provisions of the Home Rule Charter, Article 4-08(C)(4), the head of a Division cannot be a classified employee.

Section 4-01 of the Home Rule Charter generally provides that all divisions, departments, offices, and agencies shall be under the direction and supervision of the mayor. Act 487, as amended, did provide that the Director of the Personnel to the Civil Service Commission be shall be appointed by the Commission. Thus, the Civil Service Commission is correct in arguing that its director is a member of the classified system. However, this does not lead to the conclusion asserted by the Civil Service Commission that the Director of the Commission is also the Director of the Division of Personnel and Civil Service. The Director of the Division of Personnel and Civil Service is not exempt for the provisions of Section 4-08(C)(4). Therefore, the Director of the Alexandria Civil Service Commission cannot legally be the current Director of the Division of Personnel and Civil Service.

The Civil Service Commission asserts that the ordinance is invalid because it abolishes the Director of Personnel which they contend is a position provided for in the charter that cannot be abolished. However, the ordinance does not conflict with the Home Rule Charter in this manner and the criticism of Ordinance No. 247-2003 is without merit.

The Alexandria Home Rule Charter, Section 4-08(A) states, "[t]here shall be a division of personnel and civil service headed by a director of personnel." The only

9

requirement of this section is that the Division of Personnel and Civil Service be headed by a Director of Personnel. Although the Commission takes issue with the abolishment of the Director of Personnel/Civil Service, the ordinance replaces this office with a Director of Personnel and Human Resources. This new director complies with Section 4-08 of the Home Rule Charter and the ordinance places a Director of Personnel in charge of the Division of Personnel and Civil Service. Additionally, the new director is also not a classified employee in accordance with Section 4-08(C)(4) of the Home Rule Charter which states that Division heads are not members of the classified civil service system.

The Alexandria Civil Service Commission and Local No. 1848 also argue that the Home Rule Charter has been changed by 2001 La. Acts No. 390 and Ordinance No. 247-2003. However, we find that there has been no change in the Home Rule Charter of the City of Alexandria. The effect of Ordinance No. 247-2003 is that the Mayor, with the approval of the City Counsel, has created two departments within the Division of Personnel and Civil Service. The Department of Human Resources is directed and managed by a Director of Personnel and Human Resources. The Department of Civil Service is directed and managed by the Civil Service Commission Director. It is well within the authority of the Mayor, granted in Section 4-11 of the Home Rule Charter, to create departments within the divisions of his administration. The result is that the Division of Personnel and Civil Service is still headed by a Director of Personnel as required by Section 4-08. The Ordinance simply improves the organization of the Alexandria City Government and does not encroach upon the duties and powers of the Alexandria Civil Service Commission.

## CONCLUSION

At adoption, the Alexandria Home Rule Charter incorporated the classified

civil service system established by 1954 La. Acts No. 487, as amended twice thereafter, and as may be amended in the future by the legislature. 2001 La. Acts No. 390 is such an amendment. Louisiana Constitution Article VI, while providing limitations on the legislature's ability to interfere with a home rule charter, is not an absolute prohibition. Additionally, in the event of a conflict with Article VI, the specific provision of La.Const. art. X, which addresses civil service systems, is controlling. Therefore, 2001 La. Acts No. 390 and Ordinance No. 247-2003 are not in violation of the Louisiana Constitution nor are they contrary to the provisions of the home rule charter. The action of the Mayor and City of Alexandria in creating two departments within the Division of Personnel and Civil Service is a legitimate exercise of power by the Mayor in carrying out the executive functions of his office and is not an unconstitutional encroachment on the Alexandria Civil Service Commission.

The Alexandria Civil Service Commission failed in its burden of proving, by clear and convincing evidence, that 2001 La. Acts No. 390 and Ordinance No. 247-2003 are unconstitutional.

For the foregoing reasons, we affirm the judgment of the trial court in favor of Edward G. Randolph, Mayor of the City of Alexandria, and the City of Alexandria. Costs of the appeal are assessed against the Alexandria Civil Service Commission.

**AFFIRMED.**

11