Dear Mr. Davenport:
As attorney for the Alexandria Civil Service Commission, you seek the opinion of this office regarding the authority of the Administration of the City of Alexandria relative to the Alexandria Civil Service Commission and its Director.
At the outset, we review the history of the civil service system which currently exists in the City of Alexandria as applicable to municipal employees. La.Const. art. X § 15 permits the legislature to enact statutes providing for civil service systems for municipalities in the state, and provides in pertinent part:
 Nothing in this Part shall prevent . . . the establishment by the legislature or by the respective municipal governing authority of a municipal civil service system in one or more municipalities having a population of less than four hundred thousand, in any manner now or hereafter provided by law. . . .
La.Const. art. X § 15 authorizes the legislature to enact a special law applying only by name to a particular municipality. The legislature enacted such a special law applicable to the City of Alexandria pursuant to Act 487 of 1954, establishing a municipal civil service system for the City of Alexandria.[1] *Page 2 
In 1977, the electorate approved the City of Alexandria Home Rule Charter, which preserved the existing civil service system by incorporating Act 487 Act 487 of 1954 within the charter; all future legislative amendments to Act 487 were also adopted by charter provision.[2]
Act 655 of 1997[3] amended and reenacted Act 487 to establish the position of a "classified civil service/personnel director" for the City of Alexandria, a position appointed by the civil service board.[4]
Act 390 of 2001[5] amended and reenacted Act 655 of 1997. The provisions of Act 390 reference the position of civil service/personnel director for the City of Alexandria created by Act 655, and advise that "by establishing the office of civil service/personnel director, the legislature inadvertently appeared to merge the administrative functions of the civil service system with the personnel functions of the city of Alexandria." Section 1 of Act 390 further provides:
 . . . . . The legislature recognizes that the adoption of Act 655 of the 1997 Regular Session of the Legislature created a conflict between the administration of government by the city of Alexandria and the administration of a civil service system for the employees of the city of Alexandria. By establishing the office of civil service/personnel director, the legislature inadvertently appeared to merge the administrative functions of the civil service system with the personnel functions of the city of Alexandria. The purpose of this Act is to alleviate that problem and clearly establish the functions of the Alexandria Civil Service Commission and its director and to leave to the city of Alexandria the powers that it has under the constitution and its charter, including personnel matters.
The language of Section 1 of Act 390 quoted above expressed legislature intent to separate the administrative functions of the civil service system from the personnel functions of the City of Alexandria. These functions were previously *Page 3 
executed by the office of "civil service/personnel director." Act 390 deletes reference to the office of "civil service/personnel director," but retains in Section 1(C)(2) a "civil service director" as a position in the classified service, to be appointed by the civil service commission, who is ". . . responsible to the commission for the administration of the classified civil service system for the city."
Subsequent to the enactment of Act 390, the City of Alexandria adopted Ordinance No. 247-2003, which specifically abolished the office of Director of Personnel/Civil Service. Ordinance No. 247-2003 created two separate departments within the city's Division of Personnel and Civil Service, specifically, the Department of Human Resources and the Department of Civil Service. A flow-chart diagram of Ordinance No. 247-2003 reflects the reorganization of the city's Division of Personnel and Civil Service as follows:

Ordinance No. 247-2003 requires that the Department of Civil Service be headed by the Director of the Alexandria Civil Service Commission. Further, Ordinance No. 247-2003 creates a Director of the Division of Personnel and Civil Service, a position considered unclassified under Section 4-08(C)(4) of the charter, and requires the Director of the Division to also head the Department of Human Resources.
The Alexandria Civil Service Commission objected to the abolishment of the office of Director of Personnel/Civil Service by Act 390 and Ordinance No. 247-2003. The Alexandria Civil Service Commission objected to the entire reorganization accomplished by Act 390 and Ordinance No. 247-2003, especially the creation of the Director of the Division of Personnel and Civil Service as an unclassified position. Instead, the Commission asserted that the Director of the *Page 4 
Alexandria Civil Service Commission, a classified position, must also be the Director of the Division of Personnel and Civil Service.
Litigation ensued, in which the Alexandria Civil Service Commission challenged the constitutionality of Act 390 and Ordinance No. 247-2003, arguing that both acts interfered with the powers and functions of a local government operating under a home rule charter.[6] As you are aware, this constitutional challenge was rejected by the Louisiana Third Circuit Court of Appeal in Randolph v. Alexandria Civil Service Commission, 2004-1620 (La.App. 3 Cir. 4/6/05) 899 So.2d 857; writ denied, 2005-1172 (La. 11/28/05) 916 So.2d 145.
The appellate court in Randolph declared that "[Act 390] and Ordinance No. 247-2003 are not in violation of the Louisiana Constitution nor are they contrary to the provisions of the home rule charter." Id. at 865. Our research reflects no further jurisprudential ruling or legislative act that changes the result reached in Randolph. We advise that, pursuant to the Randolph decision, Act 390 remains a constitutional act of the legislature and its provisions govern the municipal civil service system in the City of Alexandria. Similarly, under Randolph, we also advise that Ordinance No. 247-2003, providing for an administrative reorganization within the City of Alexandria, remains a constitutional enactment of the City.
Despite the court's ruling in Randolph, a territorial struggle relative to employee matters continues between the Administration of the City of Alexandria and the Alexandria Civil Service Commission, which prompts your inquiry to this office. Our legal opinion responding to your questions is given in conformity with the Randolph decision. The trial court's Written Reasonsfor Judgment[7] in the Randolph case, and the decision of the Third Circuit Court of Appeal in Randolph, which examine the constitutionality of Act 390 and Ordinance No. 247-2003, not only answer the majority of your questions, but are controlling on the issues raised in your correspondence. *Page 5 
We now turn to your questions, some of which are rephrased to further clarify the City's departments and directors under consideration.
I. Whether the Civil Service Department may be under thecontrol and direction of the Division of Personnel and CivilService, which is controlled by a non-classified person, who isappointed by the Mayor.
Ordinance No. 247-2003 places the Department of Civil Service within the supervision of the Director of the Division of Personnel and Civil Service, a situation which you suggest is "tantamount to a political appointee controlling the civil service."
Your question assumes that Ordinance No. 247-2003 is unconstitutional, an assessment in conflict with theRandolph decision. The court in Randolph declared that "[Act 390] and Ordinance No. 247-2003 are not in violation of the Louisiana Constitution nor are they contrary to the provisions of the home rule charter." Id. at 865. We advise that theRandolph decision remains controlling with respect to the constitutionality of Ordinance No. 247-2003 and Act 390.
An elementary principle of statutory construction directs that all laws are presumed to be constitutional.[8] It is not the function of this office to here provide arguments in support of the unconstitutionality of Ordinance No. 247-2003, particularly where a court has found Ordinance No. 247-2003 to be constitutionally sound.[9]
We also point out that neither the trial court nor the appellate court in Randolph found anything inherently wrong in the placement of the City's Civil Service Department within a Division supervised by an unclassified Director of the Division of Personnel and Civil Service. The appellate court inRandolph implicitly, if not expressly, approved this arrangement, stating:
 The action of the Mayor and City of Alexandria in creating two departments within the Division of Personnel and Civil Service is a legitimate exercise of power by the Mayor in carrying out the executive functions of his office . . . Id. 899 So.2d at 865. *Page 6 
We advise that the placement of the Department of Civil Service within the supervision of the Division of Personnel and Civil Service by Ordinance No. 247-2003 is authorized, per the decision inRandolph.
II. Whether the Director of the Department of Civil Servicemust answer to and be under the direction of the Division ofPersonnel and Civil Service.
Ordinance No. 247-2003 requires the Director of the Alexandria Civil Service Commission to also act as the Director of the Department of Civil Service, and places the Department of Civil Service, and its Director, within the Division of Personnel and Civil Service.
The following portion of the trial court's Written Reasons forJudgment rendered in Randolph are relevant here:
 Pamela Saurage testified that in her capacity as director of the Alexandria Civil Service Commission she is a member of the classified service of the City of Alexandria. She testified under oath that the Alexandria Civil Service Commission hired her and she is answerable directly to that Commission. The basis of her argument may lie in Act No. 655 of 1997, Section 1 (C)(2), which says that "[t]he civil service/personnel director shall be appointed by the civil service board." It logically follows that if she were answerable exclusively to the Civil Service Commission, then she would not be answerable to the mayor's office. This setup would directly contradict the Alexandria City charter. The Division of Personnel is in the executive branch of the government of the City of Alexandria and its director is by definition an unclassified employee pursuant to Section 4-08(C) of the Alexandria City Charter. The director's employment is subject to the will of the Mayor of Alexandria who is empowered by the Alexandria City Charter to run the executive branch of the city's government as he sees fit.
[Emphasis added].
We acknowledge that the trial court in Randolph ruled that the Director of the Alexandria Civil Service Commission is not "answerable exclusively to the Civil Service Commission" but must also answer to the Mayor, through his delegate, the Director of the Division of Personnel and Civil Service. This determination was not specifically overruled on appeal.
However, our answer to your question is informed by the reasoning of the appellate court expressed in Randolph. The court inRandolph instructs that Act 390, *Page 7 
as a legislative act authorized by a specific grant of constitutional authority under La.Const. art. X, § 15, is controlling over the charter provisions and ordinances of the City of Alexandria which conflict with the Act's provisions.
The court in Randolph recognized that La.Const. art. X, § 15 "specifically authorizes the Louisiana Legislature to enact laws that affect a civil service system" and further advised that "[La.Const. art. VI § 6], while providing limitations on the legislature's ability to interfere with a home rule charter, is not an absolute prohibition. Additionally, in the event of a conflict with Article VI, the specific provision of La.Const. art. X, which addresses civil service systems, is controlling." Randolph, at 862 and 865.
Under Act 390, the legislature has assigned specific duties and powers to the Commission.[10] The Director of the Alexandria Civil Service Commission is the *Page 8 
administrative arm of the Commission, and works on behalf of the Commission in furtherance of the duties and powers assigned to the Commission by Act 390.
The ruling of the court in Randolph reflects that Act 390, adopted pursuant to the specific provision of La.Const. art. X addressing civil service systems, is controlling with respect to the administration of the municipal civil service in the City of Alexandria. Thus, we advise that the supervision of the Director of the Department of Civil Service by the Administration must be in conformity with Act 390. In other words, the Administration cannot "supervise" the Director of the Alexandria Civil Service Commission, while he is acting as Director of the Department of Civil Service as required by Ordinance No. 247-2003, to the extent that it hinders or impairs the Director's mandatory duty to ". . . be responsible to the commission for the administration of the classified civil service system for the city" as directed by the legislature.See Section 1(C)(2) of Act 390.
It is the opinion of this office that the Administration of the City of Alexandria may exercise supervisory authority over the Director of the Civil Service Department in a manner consistent with Act 390, which does not encroach upon the duties and powers assigned to the Commission by Act 390, and in a manner which *Page 9 
does not frustrate the ability of the Director to act as the administrative arm of the Commission, as required by Act 390.
III. Whether the Director of the Division of Personnel andCivil Service may simply transfer the employees from the Departmentof Civil Service thereby controlling and interfering with thefunction, purpose and operations of the Department of CivilService.
It is not the function of this office to make factual determinations regarding the past or current actions of the Director of the Division of Personnel and Civil Service, and whether such actions in fact interfere with the Department of Civil Service or its Director in a manner inconsistent with Act 390.
However, we would point out that Article III, Section 3-07(1) of the home rule charter subjects the Mayor, and his Administration, to civil service rules adopted by the commission regarding the transfer of classified employees.[11] In general, we advise that all decisions made by the Administration regarding the appointment, promotion and dismissal and transfer of classified employees must be made in accordance with Act 390 and the established rules of the Commission, which "have the full force of law" under Section 1(D)(3)(a) of Act 390.
IV. Whether the Executive Administration can retain an agentto determine the obligations, duties, scope of purpose and personnelof the Department of Civil Service and whether that determination isbinding upon the Department of Civil Service Department and itsoperations.
The Administration of the City of Alexandria, as a post-1974 home rule charter entity, is governed by the provisions of La.Const. Art. VI § 5(E), which permit a home rule charter government "the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with thisconstitution." The City of Alexandria is not authorized to enter into agreements which diminish the authority vested in the City of Alexandria Civil Service Commission by Act 390, as such an agreement would be inconsistent with La.Const. art. X § 15. *Page 10 
Further, the provisions of Act 390 authorize the City of Alexandria Civil Service Commission to "adopt civil service rules after public hearing to carry out the provisions of [Act 390]." Section 1(D)(3)(a) further states:
 Rules shall become effective upon approval by the commission and shall have the full force of law. Such rules shall apply to all Alexandria city departments, offices, agencies, and special districts covered by this Act and shall provide for:
 * * * (ix) Other policies, practices, and procedures necessary for the administration of the city classified civil service system.
Section 1(D)(3)(a) of Act 390 reflects that the rules of the Commission "shall apply to all Alexandria city departments . . . covered by this Act . . .," including "policies, practices, and procedures necessary for the administration of the city classified civil service system." As an "Alexandria city department", the Commission's rules apply to the Department of Civil Service.
It is the opinion of this office that the Commission's authority under Act 390 to establish rules regarding "policies, practices, and procedures necessary for the administration of the city classified civil service system" would encompass the "obligations, duties, scope of purpose and personnel" of the Department of Civil Service. The rules adopted by the Commission have the force and effect of law, and are applicable to the Department of Civil Service under Act 390. We advise that rules adopted by the Commission pursuant to Act 390 supersede any conflicting recommendations made by the Administration's agent regarding the "obligations, duties, scope of purpose and personnel" of the Department of Civil Service.
V. Whether the Alexandria Civil Service Commission can hirepersonnel for the Civil Service Department.
While Act 390 requires the Alexandria Civil Service Commission to appoint the Director of the Alexandria Civil Service Commission, we advise that the Alexandria Civil Service Commission has no other hiring authority under Act 390 or Ordinance No. 247-2003.
VI. Whether the employees and personnel of the Department ofCivil Service should be under the control and direction of theDivision of Personnel and Civil Service. *Page 11 
This question also assumes that Ordinance No. 247-2003 is unconstitutional, and as we advised in response to your first question, the court in Randolph declared that "[Act 390] and Ordinance No. 247-2003 are not in violation of the Louisiana Constitution nor are they contrary to the provisions of the home rule charter." Id. at 865. We advise that the reorganization accomplished by Ordinance No. 247-2003, which places the Department of Civil Service within the Division of Personnel and Civil Service, is valid under Randolph.
We suggest that your sixth and final question is answered in the affirmative by the appellate court in Randolph, where the appellate court advised ". . . the Ordinance simply improves the organization of the Alexandria City Government and does not encroach upon the duties and powers of the Alexandria Civil Service Commission." Id. at 865.
In summary, we advise the following: the City of Alexandria and the Alexandria Civil Service Commission remain subject to the provisions of Act 390 and Ordinance No. 247-2003, as the court inRandolph ruled both acts to be constitutional. The Administration must supervise the Department of Civil Service, and the department's Director, in a manner consistent with Act 390, which does not encroach upon the duties and powers afforded the Commission under the Act's provisions. The Commission's authority under Act 390 to establish rules regarding "policies, practices, and procedures necessary for the administration of the city classified civil service system" encompasses rules providing for the "obligations, duties, scope of purpose and personnel" of the Department of Civil Service. Rules adopted by the Commission pursuant to Act 390 supersede any conflicting recommendations made by the Administration's agent regarding the "obligations, duties, scope of purpose and personnel" of the Department of Civil Service.
Finally, insofar as compliance with Ordinance No. 247-2003 and Act 390 makes the Director of the Alexandria Civil Service Commission answerable to both the Commission and the Administration, and if the situation remains unresolved between the Administration and the Commission, we suggest that amendment to Act 390 may be necessary, to further define the authority granted the Director of the Commission.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] Act 487 of the 1954 Louisiana Regular Legislative Session.
[2] Section 4-08(B) of the City of Alexandria Home Rule Charter provides:
(B) The classified civil service system for the City of Alexandria heretofore established by Act 487 of 1954 as amended by Act 120 of 1962, Act 396 of 1964 and as may be amended by the legislature in the future, is hereby incorporated in this charter and shall continue in full force and effect and be carried out and regulated in accordance with the provisions of said statute, except as may be inconsistent with the provisions of this charter, in which case the charter shall prevail.
[3] Act 655 of the 1997 Louisiana Regular Legislative Session.
[4] See Section 1(C)(1) and (2) of Act 655.
[5] Act 390 of the 2001 Louisiana Regular Legislative Session.
[6] La.Const. art. VI, § 6 provides:
Home Rule Charter or Plan of Government; Action by Legislature Prohibited
The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
[7] See Written Reasons for Judgment, rendered September 1, 2004, in Randolph v. The Alexandria CivilService Commission, Civil Suit No. 213,980 consolidated withAlexandria Civil Service Commission v. Randolph, Civil Suit No. 214,680, 9th Judicial District Court, Rapides Parish, Louisiana, Judge Harry F. Randow, presiding.
[8] See Polk v. Edwards, 626 So.2d 1128, 1132 (La. 1993);Interstate Oil Pipe Line Co. v. Guilbeau,46 So.2d 113 (La. 1950); State on behalf of J.A.V.,558 So.2d 214 (La. 1990).
[9] An argument not specifically addressed by the court inRandolph is whether Ordinance No. 247-2003 is consistent with Act 390. We do not address the validity of the argument, other than to mention it; indeed, such an argument might be considered resjudicata by a court, in light of Randolph.
[10] Section 1(D) and (E) of Act 390 provide:
(D) The commission shall:
(1) Develop, adopt, and administer a position classification plan which shall provide for the classification of the positions of each employee in the classified service on the basis of duties and responsibilities of each position. The classification plan shall become effective upon approval by the commission after public hearing. In the development, adoption, and administration of the classification plan, the commission shall utilize the services of the director, with such expert assistance as may be necessary, in such manner as the commission may determine in its discretion.
(2) Develop, adopt, and administer a salary plan for all positions in city of employees in the classified service. The salary plan shall be adopted by the commission only after public hearing and shall thereafter be submitted to the city council for its approval or disapproval. In the development, adoption, and administration of the salary plan, the commission shall consult with the mayor and shall utilize the services of the director, with such expert assistance as may be necessary, in such manner as the commission may determine in its discretion.
(3)(a) Adopt civil service rules after public hearing to carry out the provisions of this Act. Rules shall become effective upon approval by the commission and shall have the full force of law. Such rules shall apply to all Alexandria city departments, offices, agencies, and special districts covered by this Act and shall provide for:
(i) Policies and procedures for the administration of the classification plan.
(ii) Policies and procedures for the appointing authority to furnish forms and records to the commission.
(iii) Policies and procedures for the administration of the salary plan.
(iv) Policies and methods for holding civil service tests to determine the merit and fitness of candidates for regular position appointments, promotions, reemployment, and reinstatement and shall provide for appointments defined as emergency and temporary appointments if certification is not required.
(v) The establishment and maintenance of lists of persons eligible for appointment and promotion by reason of successful participation in competitive tests and procedures for the certification of persons from eligible lists for filling vacancies.
(vi) The procedure for layoffs, suspensions, demotions, and dismissal of employees, which shall provide for public hearings before the commission in cases of appeals from the demotion, suspension, or dismissal of permanent employees.
(vii) Numbers of hours of work, attendance regulations, leaves of absence with or without pay, working test periods, and temporary appointments.
(viii) Prohibition against political activity of employees in the classified service and assessment for political purposes.
(ix) Other policies, practices, and procedures necessary for the administration of the city classified civil service system.
(b) No rule, regulation, or practice of the board shall favor or discriminate against any applicant or employee because of his membership or nonmembership in any private organization; but this shall not prohibit the city from contracting with an employee organization with respect to wages, hours, grievances, working conditions, or other conditions of employment in a manner not inconsistent with this Act or a valid rule or regulation of the civil service board.
(E) The commission shall:
(1) Conduct investigations and take action on complaints by or against any employee in the classified service. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, if warranted, in the absence of such action by the appointing authority the civil service board may order the appointing authority to act and such action shall be taken by the appointing authority.
(2) Hold hearings on appeals of dismissals, demotions, and other disciplinary matters as may be provided in the rules.
(3) Exercise witness and record subpoena powers.
(4) Appoint a director when a vacancy occurs.
(5) Make investigations concerning civil service management in the city service and report its findings to the city council.
(6) Perform such other policymaking or quasi judicial duties as may be required under the rules developed pursuant to this Act.
(7) Make, alter, amend, and promulgate rules necessary to carry out effectively the Alexandria classified civil service system.
[11] Article III, Section 3-07(1) of the charter authorizes the Mayor to "appoint and suspend or remove for just cause all city employees and appointive administrative officers provided for by or under this charter, except as otherwise provided by law, thischarter, civil service or other personnel rules adopted pursuant to this charter . . ."